[Civil No. 1665.   Filed June 4, 1919.]

[181 Pac. 186.]

L. M. LANEY, County Attorney of Maricopa County, State of Arizona, Appellant, v. STATE ex rel. D. P. JONES, L. H. NORTH, M. G. PHELPS, W. W. DOBSON and ELIJAH ALLEN, Appellees.

1. STATUTES—SUBJECTS AND TITLE—SCHOOL DISTRICTS.—Laws of 1917, chapter 5, amendatory of Civil Code of Arizona of 1913, paragraph 2770, authorizing creation of high school district out of a high school district, does not violate Constitution, article 4, section 13, sub-

division 2, in that the title "establishment and maintenance of high schools" does not cover the subject.

2. CONSTITUTIONAL LAW—DELEGATION OF POWER—SCHOOL DISTRICTS. Laws of 1917, chapter 5, amendatory of Civil Code of Arizona of 1913, paragraph 2770, authorizing creation of high school district out of high school district, is not invalid as unlawful delegation of power of dismembering union high school districts to electors of a portion of such districts.

3. CONSTITUTIONAL LAW—PRIVILEGES TO VOTERS IN SCHOOL DISTRICTS —CREATION OF NEW DISTRICT.—Laws of 1917, chapter 5, amendatory of Civil Code of Arizona of 1913, paragraph 2770, authorizing creation of high school district out of high school district, is not invalid as an unlawful attempt to confer privileges on a portion of the electors of a union high school district which are not conferred on the remaining electors.

4. CONSTITUTIONAL LAW—VALIDITY OF STATUTE—PERSONS ENTITLED TO ASSAIL.—High school district which, after another high school district was created out of it, had statutory assessed valuation of $3,000,000, and remaining territory was contiguous, could not urge that Laws of 1917, chapter 5, amendatory of Civil Code of Arizona of 1913, paragraph 2770, which authorized creation of new district, was by reason of provision for assessed valuation and contiguous territory of old district invalid because it will not operate uniformly on all communities similarly situated.

APPEAL from a judgment of the Superior Court of the county of Maricopa. F. H. Lyman, Judge. Reversed and remanded, with directions.

Mr. L. M. Laney and Mr. Thomas P. Walton, for Appellant.

Mr. J. L. Gust and Mr. T. J. Prescott, for Appellees.

ROSS, J.—Appellees concede the correctness of appellant's statement of the facts of the case, and we therefore adopt it:

"This is a *mandamus* proceeding brought in the superior court of Maricopa county by the appellees for the purpose of compelling the appellant, the county attorney of said Maricopa county, to bring a *quo warranto* action against W. M. Scott, F. D. Rowell, and G. W. Lines, to oust them from further exercising the powers, franchises, and privileges of a board of education for the Gilbert single district high school.

The appellees are the members of the board of education of the Mesa Union High School.

"Gilbert school district is officially known as school district No. 41 of Maricopa county, and Mesa school district is officially known as school district No. 4 of Maricopa county.

"On October 19, 1907, Mesa union high school district was duly organized and incorporated of and from the territory comprised within school districts numbered 4, 10, 19, 26, 29, 41, and 57, all of Maricopa county.

"On November 2, 1907, the high school of said Mesa union high school district was, pursuant to an election duly had, located in the town of Mesa in said school district No. 4 of said Mesa union high school district, and at the time of instituting this action in the court below the Mesa union high school district, with boundaries as then existing, was maintaining a high school for said district in said town of Mesa.

"On June 19, 1917, said Gilbert school district, being school district No. 41, and theretofore part of Mesa union high school district, did hold an election for the purpose of establishing and maintaining a high school in said Gilbert school district, and did, in all respects, comply with the provisions of chapter 5 of the Session Laws of 1917 of Arizona, entitled: 'An act to amend paragraph 2770, chapter 13, title 11, Revised Statutes of Arizona, 1913, Civil Code, providing for the establishment and maintenance of high schools.' It is conceded by both sides that if said act, being chapter 5, Laws of 1917, is in all respects valid and constitutional, then Gilbert High School, by virtue of its said election of June 19, 1917, and the further proceedings pursuant thereto, became, and at the time of instituting this suit in the lower court was, a validly organized and subsisting high school district. If said act of 1917, pursuant to which Gilbert high school district was organized is a valid law, then the county attorney of Maricopa county, the appellant herein, should not be compelled by *mandamus* to seek by *quo warranto* proceedings to oust the trustees or board of education of said Gilbert high school district from office. If said chapter 5, Laws of 1917, is unconstitutional and void, then said Gilbert high school district is not a valid high school district, the board of education thereof are unlawfully exercising their functions as such officers, and the county attorney should, and is ready and willing to, bring a *quo warranto* action to prevent the

members of said board of education of Gilbert high school district from further acting as such officers.

"The case was decided in the court below solely upon the pleadings, which, in the chronological order of their being filed, are as follows, to wit: Petition for writ of *mandamus;* order that alternative writ issue; alternative writ of *mandamus;* return and answer to writ and petition (including demurrer for insufficiency of facts) ; demurrer to return and answer to writ and petition.

"The court below made an order overruling the defendant's demurrer to the plaintiff's petition, and sustained the plaintiff's demurrer to the defendant's answer. Thereupon the defendant, having elected to stand upon his demurrer and answer, the court made an order for judgment in favor of the plaintiffs, pursuant to which the written judgment and order that peremptory writ of *mandamus* issue was filed on April 19, 1918."

The appellant's assignments challenge the correctness of the ruling of the court on the demurrers, and, of course, the correctness of the judgment that was entered.

The only question considered by the lower court, and the only question raised on appeal, is the constitutionality of chapter 5, Laws of 1917.

Further quoting appellant, which quotation appellees concede is correct, the constitutional validity of chapter 5 was assailed by appellees upon the three following grounds:

"(1) That the title of the act is violative of section 13 of subdivision 2 of article 4 of the Constitution of Arizona, which is as follows: 'Sec. 13. Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title.

"(2) That said act constitutes an unlawful attempt on the part of the Legislature to delegate the power of dismembering union high school districts to electors of a portion of such districts.

"(3) That said act is an unlawful attempt to confer privileges upon a portion of the electors of a union high school district which are not conferred upon the remaining electors of the union high school district."

Chapter 5 is an amendatory statute of paragraph 2770, Civil Code, reading, before the amendment, as follows:

"2770.   Any school district having an average daily attendance of two hundred or more pupils may, by a majority vote of the qualified school electors thereof, establish and maintain a high school, or two or more adjoining school districts having a joint average daily attendance of two hundred or more pupils may unite and form a union high school district for the purpose of establishing and maintaining a high school therein at the expense of such district or union high school district."

The change in this paragraph by the amendment, which is the bone of contention, is the following added proviso:

"Provided, that no such high school district shall be formed of territory already embodied in any high school district, unless the remaining territory of the original district shall be contiguous and shall have an assessed valuation of three million ($3,000,000) dollars or more; provided further, that when a new district shall be formed under the terms of this act from territory already included in a union high school district, such territory shall no longer be included in such original high school district."

It is claimed that the subject of the organization of new high school districts out of territory included in and constituting a part of an already existing union high school district is not expressed in the title of chapter 5, and is not germane to nor connected with the title of said chapter.   The effect of the amendment was to extend the privilege of establishing high schools to certain communities or districts from which the privilege had been withheld, or perhaps more correctly, to which it had not been granted by the law before its amendment.   It is contended that the context of the amendment was not foreshadowed by this subject as expressed in the title.   It is not said what the title, "The Establishment and Maintenance of High Schools," would authorize by way of legislation, but it is strenuously contended that it is not broad enough to permit legislation granting the privilege of forming a high school out of territory included in an established high school district.

An analysis of the contention of appellees, when laid bare, is that the title should have gone further and indicated or announced that the purpose of the act was to provide for

the organization of high schools out of territory already included in established high school districts. That, in failing thus to index the subject to be treated in the context, the act was misleading and misinforming. Clearly, the title contained "but one subject"—High Schools, Their Establishment and Maintenance—and quite as clearly the legislature did not depart from the subject.

In *State Board of Control* v. *Buckstegge,* 18 Ariz. 277, 158 Pac. 837, we considered the clause of the Constitution limiting every act of legislation to one subject and matters properly connected therewith, and requiring the subject to be expressed in the title, and laid down this general rule:

"This provision of the Constitution does not require that the title of an act should minutely and in great detail describe the legislation proposed; it is not necessary that the title be a synopsis or a complete index to the legislation. The title of the act, however, should be sufficiently full and comprehensive as to indicate, in a general way at least, what is to follow in the way of legislation. It should not be so meager as to mislead or tend to avert inquiry into the contents thereof."

The object of chapter 5 was to provide for the organization of high schools, their maintenance being already cared for by chapter 13, title 11, Civil Code. The legislation providing for the establishment or organization of high school districts out of any territory, whether included within existing high school districts or not, falls literally within the terms of the subject expressed in the title. Without discussing them, we cite a few cases wherein the organization of political divisions involving the same question we have was considered, and in all of them appellees' contention is rejected. *State* v. *Lewelling,* 51 Kan. 562, 33 Pac. 425; *State* v. *Hordey,* 41 Kan. 630, 21 Pac. 601; *Allison* v. *Hatton,* 46 Or. 370, 80 Pac. 101; *State* v. *City of New Whatcom,* 3 Wash. 7, 27 Pac. 1020.

The original act provides the manner of organizing high schools by prescribing the requisite qualifications of the organizers, as to number of pupils, etc., and sets forth the steps to be taken by the organizers. The amendment makes no change in these respects that can affect the question we now approach. Appellees contend that the provision in this regard unlawfully delegates the power to dismember a union

high school district, to electors of a portion of such district. This, we think, involves the power of the legislature. We know of no constitutional requirement, and none has been called to our attention, making it necessary that all of the electors of an organized high school district should give their consent before it is divided, or before some portion thereof is detached and organized into a separate high school district. On the contrary, the rule seems to be, as stated in 35 Cyc. 833, 834:

"The power to organize, establish, or lay off new school districts, or to divide, change the boundaries, or otherwise alter existing districts is vested primarily in the Legislature, which may act without the assent of the inhabitants of the affected territory. And indeed this power on the part of the Legislature has been very frequently exercised in many instances.

"The power to establish new school districts or to alter existing ones may be delegated by the Legislature to subordinate agencies or officers; and in most jurisdictions this has been done. When the power to exercise the authority is made to depend upon the performance of certain conditions, such as the signing of a petition by a certain number of voters, or the like, the agent or officer cannot act until such conditions have been complied with, and cannot refuse to act when they have been."

In the late case of *Worthington School District* v. *Eureka School District*, 173 Cal. 154, 159 Pac. 437, the court said:

"The power of the Legislature over school districts is plenary. *Pass School District* v. *Hollywood City School District*, 156 Cal. 416, 20 Ann. Cas. 87, 26 L. R. A. (N. S.) 485, 105 Pac. 122; *Reclamation District* v. *Birks*, 159 Cal. 233, 238, 113 Pac. 170. It may divide, change, or abolish such districts at pleasure, and may delegate to boards of supervisors powers of annexation under certain conditions. *Kramm* v. *Bogue*, 127 Cal. 122, 125, 69 Pac. 394."

The third point argued by appellees is disposed of by the law cited to the second point. The statute, in leaving the question as to whether a portion of a high school district shall be detached and formed into a separate district to a vote of only those electors residing in the detached portion, does not confer any special privilege upon such electors. The privilege is open alike to all communities of the state possessing

the qualifications prescribed by the statute. A case very much in point is *Wheeler* v. *Herbert,* 152 Cal. 224, 92 Pac. 353, wherein the legislative act in question provided that a certain designated portion of Fresno county, if 60 per cent of the electors residing therein at an election should so decide, should be detached from Fresno county and attached to Kings county. One of the contentions in that case was that the act granted special privileges to the voters residing in the portion of Fresno county proposed to be cut off, in that they only were permitted to vote on the question, and that therefore it violated that section of the state Constitution prohibiting the granting of privileges not common to all citizens. Appellees are making the same contention. In passing on the question, the California court said:

"Such right or privilege is not of the class of privileges referred to in that section. *Ex parte Gerino,* 143 Cal. 415, 66 L. R. A. 249, 77 Pac. 166. But if it were conceded that such privilege does fall within the scope of the section, the law does not violate its provisions. It forbids the grant of a privilege to any citizen or class of citizens, unless it is granted, upon the same terms, to all citizens. A law applying uniformly to all citizens of a particular class does not violate this section, if the class is one founded upon some natural, intrinsic, or constitutional distinction differentiating its members from the general body from which the class is selected. *Pasadena* v. *Stimson,* 91 Cal. 238, 27 Pac. 604; *Bruch* v. *Colombet,* 104 Cal. 351, 38 Pac. 45; *Krause* v. *Durbrow,* 127 Cal. 684, 60 Pac. 438. The citizens of the territory to be transferred are directly affected by the act, and, therefore, have a greater interest in the matter than other citizens of the same county. . . . That it is competent for the Legislature to pass a law which shall be executed only in the event that a majority of a certain class of persons shall declare in favor of it is a principle too well settled to require discussion. *People* v. *McFadden,* 81 Cal. 489, 15 Am. St. Rep. 66, 22 Pac. 851; *Blanding* v. *Burr,* 13 Cal. 357; *Hobart* v. *Board,* 17 Cal. 31; *People* v. *Nally,* 49 Cal. 481; *Robinson* v. *Bidwell,* 22 Cal. 379."

It is also contended that paragraph 2770, as amended, will not operate uniformly upon all communities similarly situated because the right of organizing a high school district out of territory already included in a high school district is con-

ditioned upon the latter being left with an assessed valuation of $3,000,000 after the withdrawal, and can then only withdraw providing the territory of the old district remains contiguous. In the present case, the Mesa Union High School, after the withdrawal of the Gilbert district, remains intact so far as territory is concerned, with an assessed valuation far in excess of $3,000,000. That the law might in its application, in instances, bear unequally or not operate uniformly, is of no concern to appellees, as its terms work no hardship on appellees.

In *Gherna* v. *State,* 16 Ariz. 344, Ann. Cas. 1916D, 94, 146 Pac. 494, this court said:

"We believe it to be the unquestioned rule that a person cannot raise a constitutional objection to a part of a statute which is not applicable to his own particular case. The authorities are overwhelming to this effect. We cite but a few. . . . Courts will not entertain an objection to the constitutionality of a statute, unless the objection is made by one whose rights have been in some way injuriously affected. Unless a person's rights are directly involved, such questions must necessarily be postponed, until they are met with upon the highway of adjudication, unless the unconstitutional feature, if it exists, is of such a character as to render the entire act void."

We conclude that chapter 5 as amended is not vulnerable to the objections presented by the appellees, and it necessarily follows that the judgment of the lower court must be reversed and the cause remanded, with directions that appellant's demurrer be sustained, and the complaint dismissed.

CUNNINGHAM, C. J., and BAKER, J., concur.