488 P.2d 1021

Frances SULT et al., Appellants,

v.

Mary C. O'BRIEN, School Superintendent of Pinal County, Arizona et al., Appellees.

No. 2 CA–CIV 1034.

Court of Appeals of Arizona, Division 2.

Sept. 20, 1971.

Rehearing Denied Oct. 14, 1971.

Gary Peter Klahr, Phoenix, for appellants.

Robert R. Bean, Pinal County Atty., Florence, for appellees O'Brien, Meeker, Higginbotham, Skousen, Wuertz and Santoro.

Burch, Cracchiolo, Levie, Guyer & Weyl by Joseph L. Moore, Phoenix, for appellees Cunningham, Jones and Wofford.

HOWARD, Judge.

This case involves the legality of the formation of a high school district in Pinal County, Arizona. This is an appeal from the granting of appellees' motion for summary judgment and the dismissal of appellants' counterclaim seeking a declaratory judgment.

Florence Union High School District, prior to the election in question, was comprised of two elementary school districts: Kenilworth Elementary District and Florence Elementary School District.

Pursuant to A.R.S. § 15–501 as amended, the Board of Trustees of Kenilworth Elementary School District and Coolidge Elementary School District united in a petition to the county school superintendent for the establishment of a high school.[1] The county school superintendent called a special election which was held in October of 1970. At that election the majority of persons voting in both Kenilworth Elementary School District and the Coolidge Elementary School District voted in favor of the establishment of a high school.

Appellants advance three theories supporting their contention that the election was void: (1) That the proper statutory procedure was not followed in holding the election; (2) that A.R.S. § 15–501, subsec. F as amended, is unconstitutional under the equal protection clause of the Fourteenth Amendment of the United States Constitution; and (3) the resulting elec-

tion creates an inequity and should be void on equitable principles.

THE STATUTORY PROCEDURE

In addition to A.R.S. § 15–501, subsec. C which we have previously set forth, A.R.S. § 15–501 contains the following pertinent sections:

"A. A school district having an average daily attendance of not less than two hundred pupils and an assessed valuation of not less than two million dollars, may, by a majority vote of the qualified school electors thereof, establish and maintain a high school.

B. Two or more adjoining school districts jointly having an average daily attendance of not less than two hundred pupils and property valuation as specified in subsection A, may unite and form a union high school district at the expense of such union high school district. No union high school district shall be formed of territory already embodied in a union high school district, unless the remaining territory of the original district is contiguous and has an assessed valuation of not less than five million dollars. When a new district is formed from territory already included in a union high school district, such territory shall no longer be included in the original high school district.

\* \* \* \* \* \* .

D. Public notices of the election, not less than five in a single district and not less than three in each district comprising the proposed union district, shall be posted, one to be upon the door of the schoolhouse in each district, at least ten days before the election.

E. The election shall be conducted as nearly as practicable in the manner pre-

---

1. A.R.S. § 15–501 as amended, subsection C provides:

"When a majority of the board of trustees of a common school district, or a majority of the trustees of each of two or more adjoined common school districts, unite in a petition to the county school superintendent for estab-

lishment of a high school, the superintendent shall call an election to be held at the next regular election of the school trustees if within ninety days after receipt of the petition to determine the question, or a special election called for that purpose within sixty days."

scribed in article 1, chapter 3 of this title, *relating to school bond elections.* The ballots shall contain the words 'high school, yes' and 'high school, no', and the voter shall signify his desired choice.

F. If a majority of the persons voting in a single district, or a majority of the persons voting within each district comprising the proposed union district, vote in favor of establishment of the high school, the high school district shall become effective as provided by § 15-402, subsections A and B."

\* \* \* \* \* \*

Appellants claim that in addition to the statutes already cited that § 15-402, subsec. C *must be followed when a new high* school district is being formed pursuant to § 15-501. This section provides:

"The boundaries of a district shall not be changed except as provided in this title and then only after the trustees of districts affected have had written notice of the proposed change from the county superintendent and have had an opportunity to be heard."

It is undisputed that no written notice was given to the trustees of the Florence Elementary School District, nor were they given a hearing.

Appellants have cited to us several cases in support of this contention, namely, Stuart v. Winslow Elementary School District No. 1, 100 Ariz. 375, 414 P.2d 976 (1966); Boyd v. Bell, 68 Ariz. 166, 203 P.2d 618 (1949); Ross v. School District No. 16, 60 Ariz. 9, 130 P.2d 914 (1942); Glendale Union High School District v. Peoria School District, 51 Ariz. 478, 78 P.2d 141 (1938); Hopkins v. School District No. 11, 20 Ariz. 431, 181 P. 366 (1919); King v. Henderson, 5 Ariz.App. 95, 423 P.2d 370 (1967). We consider the foregoing cases to be singularly inapposite. None of these cases concern the formation of a new high school district under the provisions of A.R.S. § 15-501 as amended in 1960. We noted in the case of King v. Henderson, supra, that we saw in § 15-501 the manifest intent to embrace an entire subject of legislation. There is no requirement in any of the sections of A.R.S. § 15-501, of giving notice to the board of trustees of the remaining common school districts and permitting them to have an opportunity to be heard. In fact, A.R.S. § 15-501, subsec. F refers specifically to § 15-402, subsections A and B but does not mention subsection C.

■ Applying the rule of *expressio unius est exclusio alterius,* the provisions contained in A.R.S. § 15-402, subsec. C were specifically eliminated as a requirement under the procedures established in A.R.S. § 15-501.

In Goren v. Buena High School District of Cochise County, 91 Ariz. 348, 372 P.2d 692 (1962) the court stated:

"Statutes dealing with the creation or alteration of high school districts \* \* \* are not to have requirements read into them which are not plainly expressed therein or necessarily inferred therefrom." 91 Ariz. at 353, 372 P.2d at 695.

We hold that the requirements of A.R.S. § 15-402, subsec. C are not applicable to the formation of high school districts under A.R.S. § 15-501.

## CONSTITUTIONALITY OF A.R.S. § 15-501

■ Because A.R.S. § 15-501 only permits the electors in the proposed district to vote and does not permit the electors in the balance of the old high school district to exercise any vote, appellants claim that the statute violates the Fourteenth Amendment to the Constitution of the United States.

Lionel Gore, the superintendent of Florence Union High School, testified on the motion for summary judgment. He stated that Florence Union High School would lose some 80 students from the Kenilworth Elementary School District out of a total enrollment of 375 students. In the area of assessed valuation, he testified that there was about 9½ million dollars in total assessed valuation in the district and that it would lose 1¾ million if the Kenilworth

District left Florence Union High School.[2] He stated that only half of the money lost from students who would not be attending any longer would be saved in lower overhead because of the fact that many district expenses would not be lowered at all. He testified that in his opinion the tax rate would go up from the present $2.74 per one hundred dollars of assessed valuation to about $3.99 per one hundred dollars of assessed valuation. Mr. Gore pointed out that Florence Union High School is rated very high by the accrediting association; that by the loss of students and revenue they would probably have to have teachers teaching out of their major fields and that this would have an adverse effect on the community, the students and the high school's accreditation.

 Because of the adverse effect testified to by Mr. Gore on the persons remaining in the Florence Union High School District, appellants claim that they should have had a right to vote in the election. To support this theory appellants have cited to us recent Supreme Court cases concerning the "one man, one vote"[3] rule and cases wherein the franchise was limited to certain voters.[4] None of these cases involve the question presented in this case and therefore we do not feel obliged to follow the United States Supreme Court. Rather, we feel that we are bound by the last pronouncement made by the Arizona Supreme Court on this subject. In Laney v. State, 20 Ariz. 416, 181 P. 186 (1919) the attack which the appellants now

make was made upon the precursor of A. R.S. § 15–501.[5] In *Laney,* the court held:

"Appellees contend that the provision in this regard unlawfully delegates the power to dismember a union high school district, to electors of a portion of such district. This, we think, involves the power of the Legislature. We know of no constitutional requirement, and none has been called to our attention, making it necessary that all the electors of an organized high school district should give their consent before it is divided, or before some portion thereof is detached and organized into a separate high school district. On the contrary, the rule seems to be, as stated in 35 Cyc. 833, 834:

'The power to organize, establish, or lay off new school districts, or to divide, change the boundaries, or otherwise alter existing districts is vested primarily in the Legislature, which may act without the assent of the inhabitants of the affected territory. And indeed this power on the part of the Legislature has been very frequently exercised in many instances.

The power to establish new school districts or to alter existing ones may be delegated by the Legislature to subordinate agencies or officers; and in most jurisdictions this has been done. When the power to exercise the authority is made to depend upon the performance of certain conditions, such as the signing of a petition by a

2. In A.R.S. § 15–501, subsec. B the legislature has provided a safeguard for those left in the remaining district by providing that the remaining territory of the original district must be contiguous and have an assessed valuation of not less than five million dollars.

3. Hadley v. Junior College Dist. of Metro. Kansas City, Mo., 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

4. City of Phoenix, Arizona v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed. 2d 523 (1970); Evans v. Cornman, 398

U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed. 2d 647 (1969); Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed. 2d 675 (1965).

5. The decision in *Laney* was based upon the "privilege and immunity" clause of the 14th Amendment rather than the "equal protection" clause. The distinction between the two clauses and the "due process" clause of the 14th Amendment is often so fine as to be indistinguishable.

certain number of voters, or the like, the agent or officer cannot act until such conditions have been complied with, and cannot refuse to act when they have been.'

\* \* \* \* \* \*

\* \* \* The statute, in leaving the question as to whether a portion of a high school district shall be detached and formed into a separate district to a vote of only those electors in the detached portion, does not confer any special privilege upon such electors. The privilege is open alike to all communities of the state possessing the qualifications prescribed by the statutes." [6] 20 Ariz. at 421-423, 181 P. at 188-189.

The court in *Laney* quoted with approval the following language from Wheeler v. Herbert, 152 Cal. 224, 92 P. 353 (1907):

"A law applying uniformly to all citizens of a particular class does not violate this section, if the class is one founded upon some natural, intrinsic, or constitutional distinction differentiating its members from the general body from which the class is selected. [citations omitted]. The citizens of the territory to be transferred are directly affected by the act, and, therefore have a greater interest in the matter than other citizens of the same county. \* \* \* That it is

competent for the Legislature to pass a law which will be executed only in the event that a majority of a certain class of persons shall declare in favor of it is a principle too well settled to require discussion. [citations omitted]." [7]

█ It is not the function of an intermediate appellate court to overrule the decisions of the Arizona Supreme Court. There being no United States Supreme Court case on point, we are bound to follow the decision of the court in Laney v. State, supra.

## EQUITABLE CONSIDERATIONS

█ Appellants contend that even if this court should find the statutory procedure was followed and that the statute is constitutional, it should still, nevertheless, void the election on equitable principles. We decline to do so. The maxim that equity follows the law is strictly applicable whenever the rights of the parties are clearly defined and established by statutory provisions. Cloeter v. Superior Court, 86 Ariz. 400, 347 P.2d 33 (1959); Valley Drive-In Theatre Corp. v. Superior Court, 79 Ariz. 396, 291 P.2d 213 (1955).

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

---

6. Once the franchise has been granted to the electorate, lines may not be drawn which are inconsistent with the equal protection clause. Evans v. Cornman, supra.

7. The fact that a state is dealing with a distinct class and treats the members of that class equally does not end the judicial inquiry. Carrington v. Rash, supra. Such an interest *may* be sufficiently compelling to justify limitations on suffrage in some elections. Evans v. Cornman, supra; Cipriano v. City of Houma, supra; Kramer v. Union Free School District, supra. In Evans v. Cornman, supra, the court stated:

"However, it is clear that such a claim cannot lightly be accepted. This Court has held that a State may not

dilute a person's vote to give weight to other interests, [citations omitted] and a lesser rule could hardly be applicable to a complete denial of the vote. [citations omitted] All too often, lack of 'substantial interest' might mean no more than a different interest, and ' "[f]encing out" from the franchise a sector of the population because of the way they may vote is constitutionally impermissible.' [citation omitted]." 398 at 422-423, 90 S.Ct. at 1755.

Whether the statute allegedly limiting the franchise denies equal protection of the law to those otherwise qualified voters who are excluded depends on whether those excluded are *in fact* substantially less interested or affected than those the statute includes. Cipriano v. City of Houma, supra.