519 P.2d 216

**LIBERTY MUTUAL INSURANCE COMPANY, a corporation, Appellant,**

v.

**WESTERN CASUALTY & SURETY COMPANY, a corporation; Arthur O. Martinez and Patricia Martinez, husband and wife; Joseph McDuffee and Colleen McDuffee, husband and wife; and Antonio Torres and Belen Torres, husband and wife, Appellees.**

**No. 2 CA–CIV 1498.**

Court of Appeals of Arizona, Division 2.

March 4, 1974.

Rehearing Denied April 9, 1974.

Review Granted May 14, 1974.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Lawr-ence H. Lieberman, Phoenix, for appellant.

Lesher & Scruggs, P. C., by D. Thomp-son Slutes, Tucson, for appellee Western Casualty & Surety Co.

W. Mercer Bouldin, Tucson, for appel-lees Martinez, McDuffee and Torres.

## OPINION

HOWARD, Judge.

The issue involved here is the extent of the employer-insurer's lien under A.R.S. § 23–1023(C).

At all times hereinafter the individual parties will be referred to as Martinez, McDuffee and Torres; Western Casualty & Surety Company as Western and Liber-ty Mutual Insurance Company as Liberty.

Martinez, McDuffee and Torres, while working for a plastering contractor were injured on the job. Claiming that the medical treatment they received for their injuries aggravated their injuries because

of the negligence of certain doctors and the Tucson General Hospital, the three injured workmen filed a malpractice action against the doctors and the hospital. They also claimed Workmen's Compensation benefits. Their claims were accepted and they were paid compensation and medical benefits by Liberty, the insurance carrier of their employer.

The parties in the malpractice action stipulated as to the total amount each plaintiff was to receive as and for a settlement and additionally stipulated that the trial court, as to each plaintiff, would further break down the total amount into various items of damage such as pain, suffering, embarrassment, loss of income past and future, loss of future earning capacity, loss of consortium, etc. The total amount of settlement for each of the plaintiffs was as follows: Martinez—$270,000, McDuffee —$150,000, Torres—$80,000. The court, pursuant to the stipulation of the parties allocated the total amount to the various sub-items of damage suggested by the parties.

Western, the insurance carrier for the doctors and hospital, then filed this action, a complaint in interpleader, wherein it alleged that Liberty had paid medical and compensation benefits to the three workmen as follows: Martinez—$22,060.99, McDuffee—$18,845.00, Torres—$15,188.37. The total sum of $56,094.36 was paid into court by Western. In the trial court the individual appellees contended that Liberty should have to pay attorney's fees and collection costs from the sum deposited in court, even though their attorney had already collected his attorney's fees and costs from the gross amount of the settlement. These appellees further contended that as to future payments which Liberty may be obliged to make under the Workmen's Compensation Act, credit should be given to Liberty only as against those items of damage which represent medical expense, loss of past and future income and loss of future earning capacity.

Liberty's position was that it could not be charged with any expenses of collecting the sums it had paid under the Workmen's Compensation Act. Initially it also asked the court for a lien or credit as to all amounts recovered by the workmen but then dropped this claim on the grounds that the trial court had no jurisdiction to make such determination.

The trial court ordered that from the sum deposited in court, $45,245.30 be distributed to Liberty, $9,349.06 to W. Mercer Bouldin as and for attorney's fees and $1,500 to W. Mercer Bouldin as and for costs and expenses. In addition, the court computed a credit against future liability under the Workmen's Compensation Act to which Liberty would be entitled. In so doing, the court sustained the position of the individual appellees.

The appellant presents the following questions for review: (1) Does A.R.S. § 23–1023 (1968) as a matter of law provide that a Workmen's Compensation carrier statutory lien can be depleted on the asserted ground that an injured employee should be reimbursed for attorney's fees and costs? (2) Did the court below exceed its jurisdiction and invade the jurisdiction of the Industrial Commission of Arizona when it went beyond resolving the dispute before the court as to the sum interplead and in addition made a determination as to the future liability of the insurance carrier in the Workmen's Compensation claims of the three employees? (3) Does A.R.S. § 23–1023 as a matter of law prohibit the depletion of the Workmen's Compensation carrier's (and employer's) statutory lien on the asserted grounds that certain items of the third party recovery are not compensated for by the Workmen's Compensation Act?

A.R.S. § 23–1023(C) allows a workman who sues a third party to receive benefits under the Workmen's Compensation Act at the same time. It provides:

"C. If he proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in chapters 6 and 7 and the insurance carrier or other person liable to pay the claim shall have a lien on the

*amount actually collectable* from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. *This lien shall not be subject to a collection fee. The amount actually collectable shall be the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery.* The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of chapters 6 and 7 for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of the compensation fund, or of the person liable to pay the claim." (Emphasis added)

We first note that Liberty has suspended payment of the benefits it was previously paying under the Workmen's Compensation Act and that counsel stipulated before the Industrial Commission as follows:

"The defendant insurance carrier was entitled to suspend benefits and claim a lien or credit. The amount of the lien or credit and the length of suspension is not before the Industrial Commission at this time because of the pending Superior Court action and, therefore, the Industrial Commission declines to rule on any of these remaining issues. The Industrial Commission does, however, retain jurisdiction to consider any and all other issues upon being properly raised by any of the parties."

The individual appellees claim it is inequitable and unfair for the insurance carrier not to contribute towards attorney's fees and court costs for the collection of monies on which it may have a lien. The maxim that equity follows the law is strictly applicable whenever the rights of the parties are clearly defined and established by statutory provisions. Sult v. O'Brien,

15 Ariz.App. 384, 488 P.2d 1021 (1971). In Ruth v. Industrial Commission, 107 Ariz. 572, 490 P.2d 828 (1971), the court held that A.R.S. § 23–1023(C) is clear and unambiguous and means that the insurer cannot be required to pay its fair share of the attorney's fees and expenses. The court quoted with approval from Ruth v. Industrial Commission, 14 Ariz.App. 324, 327, 483 P.2d 65 at 68, 69 (1971):

"The first sentence of the underscored portion of subsection C of A.R.S. § 23–1023, 1965 amendment, uses the phrase 'the amount actually collectible.' The second sentence defines this term. The lien specified in the first sentence is a lien on the net recovery after first deducting from 'the total recovery' that sum of money which represents 'the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery.' * * *

* * * The Legislature clearly stated in 1965 that the insurer *could not be required* to pay its fair share." (Emphasis in original)

The individual appellees contend that the *Ruth* rule does not apply in malpractice cases and further, that the insurer's lien is co-extensive with the type of payments the insurer is required to pay under the Workmen's Compensation Act, thus precluding a lien on sums which represent such items as pain and suffering and loss of consortium. We do not agree.

We undertake to discuss these last two contentions of appellees only because they have advanced those arguments in relation to the attorney's fees. We do agree, however, with appellant that the trial court was without jurisdiction to decide whether future sums should be credited towards appellant's future liability under Workmen's Compensation Act. The superior court of Arizona does not have original jurisdiction in Workmen's Compensation matters, but only jurisdiction to review certain orders of the Industrial Commission. A.R.S. § 23–946(A). The issue as to the credit of future sums has never been presented to

and acted upon by the Industrial Commission. The superior court had no jurisdiction until such time as an Industrial Commission award concerning such credit has been made as was done in the *Ruth* case, supra.

 Returning to the merits of the individual appellees' contentions, Larson, in his treatise on Workmen's Compensation Law, Vol. 2, Sec. 72.65(a) suggests that in malpractice cases the employer-insurer ought not to have a lien on the entire proceeds. He suggests that the damages be segregated into one portion representing the amount attributable to the original injury and another portion attributable to the aggravation caused by the malpractice and that the insurer should be subrogated only to the extent of compensation it is required to pay for aggravation of the original injury by the doctor. In accord with this view are the cases of Heaton v. Kerlan, 27 Cal.2d 716, 166 P.2d 857 (1946); Industrial Commission v. Standard Insurance Company, 149 Colo. 587, 370 P.2d 156 (1962).

This, however, is clearly not the law in Arizona. A.R.S. § 23–1023(C) provides that the insurance carrier shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of chapters 6 and 7 for such case. The "amount actually collected" should be defined in the same way as "the amount actually collectible" as was defined in the *Ruth* case. The statute is clear and unambiguous. There is no exception made for malpractice cases. Nor does the statute exclude from the amount collectible items attributable to pain and suffering, loss of consortium and the like. As is stated by Larson in 2 Workmen's Compensation, § 74.35, p. 226.130:

" . . . However, it is quite clear, as the cases now stand, that the prevailing

rule in the United States refuses to place an employee's third-party recovery outside the reach of the employer's lien on the ground that some or all of it was accounted for by damages for pain and suffering. . . ."[1]

The judgment is reversed and the trial court is directed to enter judgment in favor of appellant and against appellees in the sum of $56,094.36 together with such further relief as may be. consistent with this opinion.

HATHAWAY, C. J. and KRUCKER, J., concur.

1. See also Liberty Mutual Insurance Company v. Manasco, 271 Ala. 124, 123 So.2d 527 (1960); Barth v. Liberty Mut. Ins. Co., 212 Ark. 942, 208 S.W.2d 455; Bumbarger v. Bumbarger, 190 Pa.Super. 571, 155 A.2d 216 (1959); Gall v. Robertson, 10 Wis.2d 594, 103 N.W.2d 903 (1960).