IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ML SERVICING CO., INC., an Arizona corporation; and ML
LIQUIDATING TRUST, *Plaintiffs/Appellants,*

*v.*

ASHLEY COLES, individually and in her capacity as Trustee of the
Ashley M. Coles Family Trust, *Defendant/Appellee.*

No. 1 CA-CV 13-0282
FILED 09-16-2014

Appeal from the Superior Court in Maricopa County
No. CV2011-005890 and No. CV2011-011666 (Consolidated)
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Stinson Leonard Street LLP, Phoenix
By Michael C. Manning and James E. Holland, Jr.

Hinshaw & Culbertson LLP, Phoenix
By E. Scott Dosek, Jennifer R. Friedman, Michael Ronald Ayers
*Co-Counsel for Plaintiffs/Appellants*

Kercsmar & Feltus PLLC, Scottsdale
By Todd Feltus and Julia A. Guinane
*Counsel for Defendant/Appellee Ashley Coles*

---

**O P I N I O N**

Presiding Judge Patricia A. Orozco delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

---

**O R O Z C O**, Judge:

**¶1**    Appellants ML Servicing Co., Inc. (ML Servicing) and ML Liquidating Trust (collectively Appellants) appeal from the trial court order dismissing its action pursuant to Arizona Revised Statutes (A.R.S.) section 20-1131 (2010), a statute that prevents creditors of a deceased insured from claiming life insurance proceeds to repay the decedent's debts, and from the trial court's award of attorney fees to Appellee Ashley Coles (Ashley).[1] We find Appellants are creditors of the decedent pursuant to A.R.S. § 20-1131.  Accordingly, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**    Mortgages, Ltd. was one of Arizona's largest and oldest private mortgage lenders.  It eventually became insolvent and unable to pay its investors and the substantial loans it had committed to fund.  In 2008, various Mortgages, Ltd. creditors initiated an involuntary Chapter 7 bankruptcy on behalf of Mortgages, Ltd., which was converted into a voluntary Chapter 11 bankruptcy.  That same year, Mortgages, Ltd.'s CEO, Scott Coles (Scott), died suddenly.  Before Mortgages, Ltd.'s bankruptcy, the company was solely owned by Scott's revocable trust (the SMC Trust).

**¶3**    As part of the bankruptcy, Mortgages, Ltd. was reorganized and renamed ML Servicing Co., Inc.  ML Servicing's purpose is to pursue and collect assets on behalf of the bankruptcy estate.  Also as part of the bankruptcy, ML Liquidating Trust was created in a U.S. Bankruptcy Court-approved reorganization plan.  ML Liquidating Trust is a liquidating trust organized under Arizona law, and the owner of ML Servicing.

**¶4**    Scott owned multiple life insurance policies (the Policies), insuring his life.  Following his death, some of the insurance proceeds,

---

[1]    Because several parties involved in this case share the same last name, for clarity we use the parties' first names.

believed to be in excess of $60 million, were paid to Ashley,[2] Scott's widow. Appellants sued Ashley and alleged the Policies' premiums (supposedly in excess of $130,000 annually) were paid with funds Scott misappropriated from Mortgages, Ltd., and on that basis Appellants sought to recover the insurance proceeds under a constructive trust theory.

¶5            Appellants also asserted Scott paid the premiums on the Policies by transferring funds from Mortgages, Ltd. to the SMC Trust at a time when Mortgages, Ltd. was "insolvent or soon to be insolvent." Appellants also alleged that Scott owed a fiduciary duty to Mortgages, Ltd., which he breached by transferring money to the SMC Trust while Mortgages, Ltd. was insolvent.

¶6            Ashley filed a motion to dismiss, arguing that ML Liquidating Trust was not entitled to the Policies' proceeds because Arizona's exemption statute, codified at A.R.S. § 20-1131, barred any creditor of a decedent from recovering life insurance proceeds from a beneficiary. The trial court granted Ashley's motion and awarded her attorney fees, holding that Appellants' claims arose out of contract. The trial court held the "statute evidences the Legislature's plain intent to exempt life insurance proceeds paid to a beneficiary from the claims of creditors of the decedent's estate." The trial court also noted "A.R.S. § 20-1131.A . . . is not ambiguous and [Appellants'] arguments do not make it so." The trial court continued, "The crux of [Appellants'] claims is based on the allegation that Scott paid insurance premiums in fraud of creditors; it is the premiums, not the proceeds, which Scott allegedly misappropriated. As such, [Appellants'] remedy is a return of premiums . . . a claim for which [Appellants] do not plead."

¶7            Appellants timely appealed the trial court's grant of the motion to dismiss and award of attorney fees. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 12-120.21.A.1 (2003), and -2101.21 (Supp. 2013).[3]

---

[2]            Appellants also sued Scott's ex-wife, Francine Coles. Before oral argument on appeal, Appellants and Francine Coles reached a settlement and Francine is no longer a party to this appeal.

[3]            We cite to the current version of the applicable statutes when no material revisions have since occurred.

## DISCUSSION

¶8 We review the grant of a motion to dismiss for failure to state a claim de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012). "The dismissal of a complaint is only appropriate when the 'plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Turley v. Ethington*, 213 Ariz. 640, 643, ¶ 6, 146 P.3d 1282, 1285 (App. 2006) (quoting *Fid. Sec. Life Ins. Co v. State, Dep't of Ins.*, 191 Ariz. 222, ¶ 4, 954 P.2d 580, 582 (1998)). When ruling on a Rule 12(b)(6) motion to dismiss, the trial court may look only to the complaint itself and consider the well-pled factual allegations contained within the complaint. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008). We assume the truth of all well-pled factual allegations and consider all reasonable inferences drawn from such facts. *Id.* Nonetheless, mere conclusory statements inserted as facts are insufficient to state a claim upon which the trial court may grant relief. *Id.* Mere legal conclusions do not suffice because they do "not satisfy Arizona's notice pleading standard under Rule 8" of the Arizona Rules of Civil Procedure. *Id.*

I. Arizona's Exemption Statute: A.R.S. § 20-1131

¶9 We review issues of statutory interpretation de novo. *DeVries v. State*, 221 Ariz. 201, 204, ¶ 6, 211 P.3d 1185, 1188 (App. 2009). The primary goal in statutory interpretation is to give effect to the Legislature's intent in enacting the statute. *Id.* Under § 20-1131.A, "[l]ife insurance proceeds paid to a decedent's beneficiary are exempt from claims of creditors of the decedent's estate." *In re Estate of King* (*King*), 228 Ariz. 565, 568, ¶ 10, 269 P.3d 1189, 1192 (App. 2012). Section 20-1131.A provides:

> If a policy of life insurance is effected by any person on the person's own life . . . in favor of another person having an insurable interest in the policy, or made payable by assignment, change of beneficiary or other means to a third person, the lawful beneficiary or such third person, other than the person effecting the insurance or the person's legal representatives, is entitled to its proceeds against the creditors and representatives of the person effecting the insurance.

¶10 The legislatures that have enacted such exemption statutes "wanted to encourage individuals to provide for their heirs and in doing so, protect their heirs from their creditors," therefore, we construe such statutes liberally. *King*, 228 Ariz. at 568, ¶ 12, 269 P.3d at 1192 (citing cases).

A. Appellants are "Creditors" as Contemplated by the Statute.

¶11 Appellants argue that A.R.S. § 20-1131 does not exempt their claim because they are not suing as a creditor pursuing collections; rather, they are suing as the Policies' owner. We disagree.

¶12 The word "creditor" is not defined in § 20-1131, but the Legislature defined the term in another title, which may provide us guidance. In Title 44, Trade and Commerce, the Legislature defined "creditor" as "a person who has a claim" and defines a "claim" as "a right to payment, whether or not the right is reduced to a judgment." *See* A.R.S. § 44-1001 (2013). Additionally, while we have not yet interpreted what constitutes a creditor under § 20-1131, the rule is well settled that an undefined statutory term is given its ordinary meaning unless it appears from the context that a different meaning is intended for the term. *Sierra Tucson, Inc. v. Pima Cnty.*, 178 Ariz. 215, 219, 871 P.2d 762, 766 (App. 1994). We also look to an established, widely respected dictionary definition of a term when attempting to determine the ordinary meaning of a term not defined in a statute. *Id.* Black's Law Dictionary defines "creditor" as "one to whom a debt is owed . . . a person or entity with a definite claim against another." *Black's Law Dictionary* 424 (9th ed. 2009). Because the Legislature did not indicate its intention in § 20-1131 to apply a different meaning to the term, we adopt these general definitions of "creditor."

¶13 While we recognize that Appellants may be involuntary creditors and that Appellants had no control over Scott's alleged use of Mortgages, Ltd. funds to pay the Policies' premiums, Appellants are creditors just the same. A creditor is one who is owed a debt. *See id.* Appellants allege Scott misappropriated their funds, and now seek compensation for those misappropriated funds. Appellants are simply an entity to which a debt is owed—even if they did not intentionally loan Scott money with the intention of being repaid, they nonetheless seek repayment—which is the ordinary meaning of creditor.

¶14 Appellants assert that their property was wrongfully taken to pay the Policies' premiums; therefore, they are the true owner and can sue to recover its property simply by virtue of ownership. However, in *King*, we established that no person or entity owns insurance proceeds until the insured's death. *See* 228 Ariz. at 568, ¶ 15, 269 P.3d at 1192. Appellants therefore cannot claim to have owned the proceeds predating Scott's death because Scott wrongfully took the funds from Mortgages, Ltd. to pay the Policies' premiums. The Policies' proceeds simply did not exist in Scott's lifetime, and neither Scott nor Mortgages, Ltd. ever owned the proceeds for

Appellants to reclaim. *See id.* Appellants cannot avoid their classification as a creditor, one to whom a debt is owed, simply by asserting that the funds they seek to recover are not a debt, but rather Appellants' property in the first instance.

B.      Section 20-1131.A Bars Appellants' Recovery of the Proceeds.

**¶15**      Appellants argue that § 20-1131 only applies to "lawful beneficiaries" and because Scott did not lawfully own the purchase money, he could not name a "lawful beneficiary." However, a "lawful beneficiary" has nothing to do with the procurement of a policy. Instead, the term focuses on whether the beneficiary has a proper insurable interest.

**¶16**      When relating to personal insurance, an "insurable interest" includes: an individual's interest in the life of the insured when the individual has a "substantial interest engendered by love and affection" when the individual is closely related "by blood or by law." *See id.* § 20-1104.C.1 (2010).

**¶17**      In this case, Ashley had an insurable interest in the policy, because she was married to Scott. Thus, she was related to the insured individual by law and had a "substantial interest engendered by love and affection," pursuant to A.R.S. § 20-1104.C.1. Therefore, we hold that Ashley is a beneficiary as contemplated by the statute, even if Scott secured the Policies through unlawful means.

**¶18**      Accordingly, because Appellants are creditors and Ashley has an insurable interest under the statute; we find that § 20-1131 bars Appellants from recovering the proceeds of the Policies.

C.      The Legislature Provided a Remedy at Law for this Situation in § 20-1131.B.

**¶19**      Appellants argue that the "Legislature never intended to prevent rightful owners from recovering proceeds of their property." For the reasons discussed above, we reject this argument. The Legislature did however, intend for defrauded creditors to be able to recover the funds that were fraudulently used to pay the *premiums* of a decedent's life insurance policy. Defrauded creditors have a means by which to recover fraudulently taken premiums. *See* A.R.S. § 20-1131.B. In the event that life insurance premiums were paid in fraud of the decedent's creditors, § 20-1131.B provides, "the amount of any premiums for insurance paid in fraud of creditors, with interest, shall inure to their benefit from the proceeds of the policy." This is the appropriate remedy at law, which would have made

Appellants whole from Scott's alleged wrongdoing. Yet, Appellants chose not to pursue this relief.

¶20 Although Appellants contend that the "near-universal rule [among other jurisdictions] is that state exemption statutes do not apply to life insurance policies purchased with stolen funds," Appellants cite no binding Arizona authority, and we have found none. While we agree that exemption statutes should not be used as a shield for fraud, we must not give an absurd construction to the statute either. *See State v. Affordable Bail Bonds*, 198 Ariz. 34, 37, ¶ 12, 6 P.3d 339, 342 (App. 2000) ("[S]tatutes must be given a sensible construction that accomplishes the legislative intent and which avoids absurd results."). When construing statutes, we follow the basic rules that "the words of a statute must be construed in conjunction with the full text of the statute" and that we should "not interpret the language of a statute so as to render it meaningless." *Golder v. Dep't of Revenue, State Bd. of Tax Appeals*, 123 Ariz. 260, 265, 599 P.2d 216, 221 (1979). Section 20-1131 provides a remedy for the harmed party when insurance premiums have been paid by fraudulent means. Subsection B would be meaningless if we accepted Appellants' interpretation of § 20-1131 and allowed them to recover the insurance proceeds because Scott's alleged misappropriation of funds resulted in the fraudulent payment of the Policies' premiums.

¶21 For these reasons, we find the trial court properly dismissed the claims that Appellants assert as to the proceeds of the Policies, and we affirm the trial court's order granting Ashley's motion to dismiss.

II. Constructive Trust

¶22 Appellants argue that § 20-1131 is inapplicable in this case because they possess a constructive trust on funds used to pay the Policies' premiums, and therefore they own the proceeds. Appellants argue that a constructive trust may trace and recover proceeds of unlawfully taken property without being subject to exemption statutes. Appellants seek a constructive trust over the Policies' proceeds because Scott allegedly misappropriated funds from Mortgages, Ltd. to the SMC Trust to pay the premiums. Ashley, however, argues that the issue of constructive trust has been waived as applied to her because it was not raised before the trial court. *See, e.g., Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18, 169 P.3d 120, 125 (App. 2007) ("Generally, arguments raised for the first time on appeal are untimely and deemed waived."). Nonetheless, we have discretion to allow a party to raise an argument for the first time in oral argument. *See Long v. City of Glendale*, 208 Ariz. 319, 329 n.7, ¶ 36, 93 P.3d

519, 529 n.7 (App. 2007). The record before us indicates that the parties discussed the issue of Appellants' constructive trust claim at length at oral argument on the motion to dismiss in the trial court. Therefore, we find Appellants have not waived the constructive trust argument and address this issue.

   A. Because § 20-1131 Provides an Adequate Remedy at Law, a Constructive Trust is not the Appropriate Remedy.

**¶23**  A constructive trust is an equitable remedy. *See Turley*, 213 Ariz. at 643, ¶ 8, 146 P.3d at 1285 ("A constructive trust is an equitable doctrine that prevents one person from being unjustly enriched at the expense of another. . . . It arises by operation of law and not by agreement or intention." (internal quotation marks omitted)). A constructive trust is an appropriate remedy when property has been obtained through unconscionable conduct, "such as fraud, . . . to prevent the title holder from continuing to reap the benefits of ownership." *Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 130, ¶ 23, 272 P.3d 355, 361 (App. 2012).

**¶24**  The imposition of a constructive trust is unavailable, and in fact improper, when an adequate remedy at law is available to the harmed party. *See, e.g.*, *Sult v. O'Brien*, 15 Ariz. App. 384, 388, 488 P.2d 1021, 1025 (1971) ("The maxim that equity follows the law is strictly applicable whenever the rights of the parties are clearly defined and established by statutory provisions."); *see also Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 211, ¶ 14, 228 P.3d 943, 947 (App. 2010) (noting that the "doctrine that equity will grant no relief when there is an adequate remedy at law is limited to cases in which there is an adequate legal remedy against the defendants that are before the court.").

**¶25**  Appellants argue that this court adopted a "near-universal" rule that exemption statutes do not apply to constructive trusts in *Harmon v. Harmon*, 126 Ariz. 242, 244 n.2, 613 P.2d 1298, 1300 n.2 (App. 1980). We disagree with this interpretation of *Harmon*. While *Harmon* recognizes that the tracing feature of a constructive trust *may* permit plaintiffs "to reach property otherwise exempt from the reach of creditors," *id.*, the mention of a tracing feature in a footnote in that case does not establish that the holder of a constructive trust has rights superior to those of other creditors. Moreover, *Harmon* was discussing the election of remedies between a constructive trust and other remedies available to a prevailing party. *See id.* at 244, 613 P.2d at 1300. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.* at 245, 613 P.2d at 1301. This restitution, however, may be in the form of a

judgment at law or a decree in equity, and courts are "cautious in their acceptance of petitions for constructive trusts." *Id.* at 244–45, 613 P.2d at 1300–01.

**¶26**       As discussed above, § 20-1131 provides a proper remedy at law when creditors have been defrauded in order to pay life insurance premiums—the creditor may recover the amount of premiums paid in fraud of the creditor, plus interest. A.R.S. § 20-1131.B.  This is an adequate remedy at law because it makes Appellants whole by placing them in the same position they would have been in but for Scott's alleged misuse of those funds to pay the Policies' premiums.

### B.       Section 20-1131 is Constitutional as Applied.

**¶27**       Appellants argue that because they "own" the proceeds of the policies, § 20-1131 constitutes an unconstitutional taking.  As previously stated, life insurance proceeds are not owned by anyone until the death of the insured.  *King*, 228 Ariz. at 568, ¶ 15, 269 P.3d at 1192.  Therefore, Appellants could not assert ownership of the Policies prior to Scott's death. And after Scott's death, the insurance companies correctly paid the Policies to Ashley because Appellants never had a property interest in the proceeds. For these reasons, § 20-1131 does not constitute an unconstitutional taking of Appellants' property.

### III.    Attorney Fees

**¶28**       After granting Ashley's motion to dismiss, the trial court also awarded attorney fees to Ashley under A.R.S. § 12-341.01.A (2010). Appellants challenge this award contending that attorney fees are not recoverable under § 12-341.01 because the dispute did not arise from contract.

**¶29**       We review the trial court's decision to award attorney fees to a successful party under § 12-341.01.A de novo. *Rudinsky v. Harris*, 231 Ariz. 95, 101, ¶ 27, 290 P.3d 1218, 1224 (App. 2012).  Section 12-341.01 permits the trial court to award attorney fees to the "successful party" in a "contested action arising out of contract" in order to "mitigate the burden of the expense of litigation to establish a just claim or a just defense." *See Rudinsky*, 231 Ariz. at 101, ¶ 27, 290 P.3d at 1224.

**¶30**       The meaning of "arises out of contract" is broad for the purposes of this statute.  *Id.*  For instance, for the purposes of § 12-341.01, an action is considered to have arisen out of contract when the plaintiff asserted a contract and the defendant successfully proved that no contract

existed. *Id.* Moreover, a trial court may award attorney fees under § 12-341.01 to the successful party even on contract claims that are interwoven with tort claims. *Id.* at 102, ¶ 30, 290 P.3d at 1225; *see also Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982) ("The language is broad enough, however, that it could be argued, as plaintiffs do here, that attorney's fees may be recoverable in tort cases which find their basis in contract.").

¶31 The test to determine if an action arises out of contract is whether the plaintiff would have a claim "even in the absence of a contract." *See Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15–16, ¶ 27, 6 P.3d 315, 320–21 (App. 2000). A "tort claim will 'arise out of a contract' only when the tort could not exist 'but for' the breach or avoidance of contract." *Id.*; *see also Sparks*, 132 Ariz. at 543, 647 P.2d at 1141 ("The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under § 12-341.01(A) as long as the cause of action in tort could not exist but for the breach of the contract.").

¶32 In their Complaint, Appellants argue that (1) Ashley was unjustly enriched by policy proceeds and Appellants' impoverishment was directly linked to Ashley's enrichment; (2) payment of policy premiums constituted fraudulent transfer from Mortgages, Ltd. to the SMC Trust; (3) Appellants were entitled to a constructive trust on the wrongfully paid Policies' premiums; (4) wrongful distribution; and (5) corporate trust fund doctrine. In evaluating these claims, we must ask whether Appellants have a claim even in the absence of the insurance contract. The answer to that question is no. Although we recognize that Appellants' claims sound primarily in tort or quasi-contract and that neither Mortgage's, Ltd. nor Appellants ever had a contract directly with Ashley, Appellants' claims would not exist without the Policies' proceeds which came from Scott's insurance contract with the life insurance companies. The only reason that Appellants have these claims against Ashley is because the Policies from the insurance contracts were paid out to Ashley.

¶33 Therefore, we agree with the trial court that the "insurance contract is at the core of this action" and acknowledge that there was a reasonable basis for the trial court's discretionary award of fees. Accordingly, we agree with the trial court that this action arose out of contract, for purposes of A.R.S. § 12-341.01.A and will not disturb the trial court's award of fees. *See Rudinsky*, 231 Ariz. at 101, ¶ 27, 290 P.3d at 1224.

IV.    Request for Attorney Fees

**¶34**        Ashley requests attorney fees and costs pursuant to A.R.S. §§ 12-341, -341.01.A, and ARCAP 21.  In our discretion, we decline to award attorney fees on appeal.  We award Ashley her costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶35**        For the above reasons, we affirm the trial court's orders granting Ashley's motion to dismiss and granting Ashley's reasonable attorney fees and costs.



Ruth A. Willingham · Clerk of the Court
FILED: gsh