93 P.3d 519

**John F. LONG, an Arizona resident, Plaintiff–Appellant,**

**v.**

**CITY OF GLENDALE, a municipal corporation, Defendant– Appellee.**

**No. 1 CA–CV 03–0051.**

Court of Appeals of Arizona, Division 1, Department A.

June 29, 2004.

---

Cohen Kennedy, Dowd & Quigley, P.C. By Ronald Jay Cohen, Laura H. Kennedy, Phoenix, Attorneys for Plaintiff–Appellant.

Fennemore Craig, By Timothy Berg, Keith L. Hendricks, Theresa Dwyer, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

SNOW, Judge.

¶ 1 John F. Long appeals the trial court's dismissal of his suit against the City of Glendale. Long sued Glendale after the City decided to commercially develop property adjacent to its airport. For the reasons set forth below, we affirm in part, reverse in part and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Twenty years ago, Long either sold or donated three parcels of property to Glendale for its airport. He conditioned his grant of parcel B–1, B–2 and B–3 on the City's use of the property for airport and municipal purposes. Each deed included an identical reversion clause providing a possibility of reverter to Long or his heirs if the City ceased to use some part of each parcel as its municipal airport and for other municipal purposes. The three deeds also contained an identical use restriction clause restricting the City's use of the property to airport and municipal purposes, but explicitly permitting improvement for the operation of an airport, such as "runways, terminals and any additional improvements or facilities assessory [sic] to" an airport.

¶ 3 In his complaint, Long contends that the City agreed to construct a second runway at the airport on parcel B–3 and that Long's donation of that parcel was based on this agreement. The City's recent 2001 lease to the Ryan Companies U.S., Inc. of property adjacent to the airport to pursue the commercial development of the property precludes the construction of a second runway on parcel B–3 due to "clear areas" that must exist around a second runway. Long alleged in his complaint that he did not realize that the City would not build a second runway on parcel B–3 until he learned of the City's lease to the Ryan Companies that would prevent such construction.

¶ 4 Long's complaint accordingly includes causes of action for: (1) specific performance enjoining the City from proceeding with the commercial development and thus precluding runway construction on parcel B–3; (2) promissory estoppel requesting similar relief; (3) an alternative count for equitable reformation of the deed to require that the City build a second runway on the parcel; (4) rescission of Long's donation of parcel B–3 to

the City; (5) equitable resulting trust revesting the title to parcel B–3 in Long; and (6) quiet title to parcel B–3.

¶ 5 The trial court granted the City's motion to dismiss because it determined that Long's claims were barred by the statute of limitations.[1] It further determined that the City's use of the property did not trigger the reversion clause or violate the use restriction contained in the deed, and Long's complaint was barred, at least in part, by the statute of frauds. Because it found the resolution of these issues dispositive of the entire complaint, the court dismissed the complaint without individually addressing Long's claims. Long timely appealed. He argues that the trial court erred by ruling that the statute of limitations barred his cause of action, by interpreting the deed without taking into account extrinsic evidence of the parties' intent, and by determining that the statute of frauds precluded his claims.

## ANALYSIS

### I. Statute of Limitations

#### A. Constructive Notice

¶ 6 The City amended its airport plan at a public meeting in January 1998 and deleted the provision for a second runway. The court found therefrom that Long's claims against the City accrued in January 1998. It cited dicta in *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 719 n. 1 (7th Cir.1994), in which the court observed that potential claimants receive "constructive notice" of actions taken by a municipality at a municipality's open meetings. On appeal, the City also cites to *Sousa v. Town of Coventry*, 774 A.2d 812, 815 (R.I.2001), which could be read to adopt similar reasoning.

¶ 7 The court accordingly reasoned that because Long did not provide the City with notice of his claims until July 2001, his claims

---

1. Although the City denominated its motion as one to dismiss, the court considered without objection the attachments to the Complaint and other materials submitted by the City, characterized as "the operative documents." These materials included:(1) the 1981 Glendale Municipal Airport Master Plan Report; (2) the three deeds by which Long conveyed property to the airport; (3) the City's 1997 Master Plan Update Report and community notices of the report; and (4) the City's September 2001 Response to Long's Notice of Claim. The court also considered the text of a letter to Long from Quentin Tolby, a City Councilman at the time Long donated the land to the City.

were barred by Arizona Revised Statutes ("A.R.S.") section 12–821.01(A) (2003) which requires that notice of a claim be given to a public entity within 180 days of claim accrual. The court further determined that because Long did not file his lawsuit until January 2002, his claims were barred by A.R.S. § 12–821 (2003) which requires that a lawsuit against a public entity be filed within one year of claim accrual.

¶ 8 Long, on the other hand, argues that the trial court erred in so finding because, pursuant to Arizona law, his claims against the City did not accrue until he discovered them.

¶ 9 Despite the dicta in *Cathedral of Joy*, and the case law from other states, we use Arizona law to evaluate the accrual of Long's claims against the City. The Arizona statute defining claim accrual against public entities very specifically provides: "[a] cause of action accrues when the damaged party *realizes he or she has been damaged* and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." A.R.S. § 12–821.01(B) (emphasis added).

¶ 10 We interpret the words of a statute "according to the common and approved use of the language." A.R.S. § 1–213 (2002). To "realize" something is to "comprehend [it] fully or correctly." *Webster's II New College Dictionary* 922 (2001). The requirement that a claimant "realize" he has been damaged is inconsistent with the idea that claimants can be deemed to have notice of a claim as a matter of law regardless of their actual knowledge of the claim. One does not "realize" something because there is a legal presumption that he knows it.

¶ 11 We have previously stated that the restrictive time periods for bringing claims against public entities are not unreasonable precisely because such claims do not accrue until the claimant realizes he or she has been injured. The claimant must further discover "or reasonably should have discovered that the injury was caused by the defendant's conduct." *See Flood Control Dist. of Maricopa County v. Gaines*, 202 Ariz. 248,

254, ¶ 17, 43 P.3d 196, 202 (App.2002) (finding statutory limitations periods for bringing claims against governmental entities appropriately applied to actions for inverse condemnation). We continue to adhere to that interpretation of the accrual statute.

¶ 12 The City argues that the policy behind the open meeting law is furthered by holding members of the public accountable for the content of public meetings. The policy supporting the open meetings law, however, does not include attributing knowledge to every citizen of every action taken at every public meeting. Rather the policy is "to open the conduct of the business of government to the scrutiny of the public and to ban decision-making in secret." *Cooner v. Bd. of Educ.*, 136 Ariz. 11, 16, 663 P.2d 1002, 1007 (App.1982) (quoting *Karol v. Bd. of Educ.*, 122 Ariz. 95, 97, 593 P.2d 649, 651 (1979)). It thus does not serve the policy to deprive members of the public of claims they may have against a public entity before they may realize they have such a claim.

¶ 13 The City further argues that courts routinely impute knowledge of legal provisions to the public regardless of the person's actual knowledge of the law or legal procedure. *See, e.g., Cooper v. Ariz. W. College Dist. Governing Bd.*, 125 Ariz. 463, 467, 610 P.2d 465, 469 (App.1980) (stating that "all persons are presumed to know the contents of the statutory provision[s]"); *Forum Dev., L.C. v. Ariz. Dep't of Rev.*, 192 Ariz. 90, 99 n. 4, 961 P.2d 1038, 1047 n. 4 (App.1997) (finding that taxpayers had constructive notice of their statutory right to appeal assessments). Imputing knowledge of the law to the public, however, is different than imputing knowledge to the public of all governmental action.

¶ 14 For some purposes the public may be deemed to have constructive knowledge through the existence of available public records or other means. However, while official records may give constructive notice of some facts, they do so only to those who are bound to search those records. *Mountain States Tel. & Tel. Co. v. Kelton*, 79 Ariz. 126, 130–31, 285 P.2d 168, 170–71 (1955) (explaining that records are constructive notice only to those bound to search for such rec-

ords). The open meeting law does not compel the general public to know the content of every public meeting or search public records pertaining to those meetings. Thus, even presuming that the City complied with the open meeting law, when the City Council deleted the provision for a second runway in the 1998 airport master plan, such action was not alone sufficient to cause Long to "realize" that he had a claim against the City.

### B. Issues of Fact

¶ 15 The City also argues that its decision to delete the second runway from its airport master plan was the subject of several newspaper articles and public notices and thus there can be no real issue of fact whether Long was "on notice" of the second runway's deletion back in 1998. However, even assuming that A.R.S. § 12–821.01 should be interpreted to attribute to Long knowledge that reasonable inquiry on his part would have disclosed, "[w]hen discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury." *Doe v. Roe*, 191 Ariz. 313, 323, ¶ 32, 955 P.2d 951, 961 (1998) (citing *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 591, 898 P.2d 964, 969 (1995)). Thus, Long's claims were not subject to dismissal as a matter of law.

### C. Rescission and Reformation Claims Are Subject to A.R.S. § 12–821.01

¶ 16 The City also contends that Long's alternative claims for reformation and rescission accrued when the deed was written as opposed to when Long first discovered that the City had entered a lease with the Ryan Companies. That question, however, is also a factual issue. Long's claims for reformation and rescission, being claims against a public entity, are brought pursuant to the law regulating claims against public entities. As demonstrated above, A.R.S. § 12–821.01 contains its own definition of claims accrual

that requires that the claimant realize his damage prior to the accrual of the claim. *See Flood Control Dist.*, 202 Ariz. at 254, ¶ 17, 43 P.3d at 202 (holding that discovery rule applies to inverse condemnation claim under A.R.S. § 12–821).

¶ 17 Rescission and reformation are claims that seek relief based on fraud or mistake. Such claims do not accrue "until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Gust*, 182 Ariz. at 591, 898 P.2d at 969. Whether Long realized the insufficiency of the deed language prior to learning of the lease to the Ryan Companies is a question that is not an appropriate basis for entry of judgment at this stage of the proceedings. *See Doe*, 191 Ariz. at 323, ¶ 32, 955 P.2d at 961 (citing *Gust*, 182 Ariz. at 591, 898 P.2d at 969).

### D. The City Has Not Established Its Claim of Adverse Possession

¶ 18 Finally, the City claims that if the deed were interpreted, as Long suggests, to require that the City build a second runway on parcel B–3, the City has failed to accomplish such construction for almost twenty years. Thus, due to the City's inaction in building the runway, it asserts that it has already acquired the property through the doctrine of adverse possession despite the reversion clause in the deed to parcel B–3. As a result, the City argues, Long's claim to repossess the property is barred by A.R.S. § 12–523 (2003), the statute pertaining to causes of action in adverse possession.[2] This argument is readily resolved.

¶ 19 First, because the City's airport plan continued to show that it intended to build a second runway on parcel B–3 until 1998, its possession of the property was not adverse to the agreement pleaded by Long at least until the City changed that plan.[3] Sec-

---

2. A.R.S. § 12–523(A) states in pertinent part:

An action to recover real property from a person in peaceable and adverse possession under title or color of title shall be commenced within three years after the cause of action accrues, and not afterward.

3. The January 1998 meeting resulted in the adoption of a new airport general master plan that deleted the second runway. However, the adoption of the plan by itself would not have prevented the City from reversing its decision and, eventually, constructing a second runway on parcel B–3. Nor would any action have been

ond, even assuming that the change of the airport plan was sufficient to notify Long that the City was holding the property adversely to the reversion clause in the deed, a motion to dismiss is inadequate to demonstrate that the City adversely possessed the property for a sufficient period to state an adverse possession claim, or that it otherwise complied with the elements of the claim. Before adverse possession could bar Long's claims to recover the property, the City, as the adverse claimant, would have to prove all the elements of adverse possession. The City has yet to offer evidence to support its claim. *See Combs v. DuBois,* 135 Ariz. 465, 468, 662 P.2d 140, 143 (App.1982). Thus, the City's attempt to justify dismissal of Long's claims on a motion to dismiss because it has acquired the property through adverse possession, is, at the least, premature.

¶ 20 In sum, accepting Long's allegation that he learned about his alleged injury in the summer of 2001, we find his claims are not barred by the statute of limitations as a matter of law.

## II. Extrinsic Evidence of The Parties' Intent

¶ 21 A number of Long's counts rest on his assertion that the deed transferring parcel B–3 to the City requires the City to build a second runway on that parcel. He alleges that, appropriately interpreted, two separate provisions in the deed require this result— the reversion clause and the use restriction clause.[4]

¶ 22 In pertinent part the reversion clause states:

> For so long as the City ... maintains, occupies and operates the Property or a portion thereof as the primary municipal airport and provides services and uses accessory thereto and for any other use or purpose of a municipal nature; ... Grantee shall possess all right, title and interest in the Property. Upon the occurrence of any of the above Reversion Event [sic], all right, title and interest in the Property ...

shall revert back to John F. Long and Mary P. Long.

Although the deed language specifies that a portion of the property be used as an airport and to "provide[ ] services and uses accessory thereto and for any other use or purpose of a municipal nature," nothing specifically requires that a runway be built on the property. The import of the language is quite to the contrary.

¶ 23 The use restriction clause, which contains no reversion language, requires the City to "(i) use, occupy and operate the Property as its principal municipal airport; (ii) have the right to perform any and all services and uses accessory to such use and any other municipal use." The use restriction section of the deed thereafter permits the construction on the parcel of "runways, terminals and any additional improvements or facilities assessory [sic] to the aforesaid uses of the property." It gives Long the power to enforce its provisions through injunctive relief, but unlike the reversion clause, does not give Long any right to the return of the property if the use clause provisions are violated.

¶ 24 Long argues that the term in the reversion clause which requires the City to use some or all of the property as its "primary municipal airport" and the term in the use restriction clause which requires the City to operate the property as its "principal municipal airport" should be interpreted to require that the City use the property on parcel B–3 for a second runway. He asserts that the construction of the second runway on parcel B–3 was the intent of the parties at the time the donation was made.

¶ 25 The complaint alleges that when Long had originally sold and donated the three parcels of land to the City in late 1983 and early 1984, the City gave Long a copy of its 1981 airport layout plan. The plan indicated the possibility of building a second runway on the airport site and the potential second runway was planned for parcel B–3. And, Long alleges, the City promised him that a

---

immediately taken on the property itself that would have alerted Long that the City had changed its plans.

4. Long's complaint does not seek the return of parcels B–1 and B–2 for the City's failure to build a second runway thereon.

second runway would be built on parcel B–3 when needed. Long alleges that it was on the basis of this representation that he donated parcel B–3 to the City. Long's complaint further asserts that in the following years the City continued to represent that it was committed to building a second runway on Parcel B–3 consistent with the 1981 plan and a subsequent airport layout plan adopted in 1989. The trial court, however, dismissed Long's claims in part because it found that neither the language of the reversion clause nor the use restriction clause was implicated by the City's lease to Ryan and its effect of precluding the construction of a second runway.

¶ 26 On appeal, Long argues that the trial court erred in interpreting the deed without considering the evidence of the parties' intent in donating and accepting parcel B–3. In its turn, the City argues that because the language in the reversion clause and the use restriction clause is not ambiguous, and does not require the construction of a second runway, no evidence of the parties' intent is admissible to contradict the deed's plain meaning. We do not entirely agree with either party.

¶ 27 The parol evidence rule remains a viable doctrine in Arizona. However, Arizona law adopts the more permissive approach to the rule reflected in *Taylor v. State Farm Mutual Automobile Insurance Co.*, 175 Ariz. 148, 854 P.2d 1134 (1993),[5] and the Restatement (Second) of Contracts § 214(c), cmt. b (1979).

¶ 28 According to that view, the trial court, before admitting external evidence of the intent of the parties to interpret a written agreement, must first consider the allegations made by the proponent of the extrinsic evidence as to the appropriate interpretation of the writing in light of the extrinsic evidence alleged. *Taylor*, 175 Ariz. at 155, 854 P.2d at 1140. Next, the court should consider the language of the writing. If the court finds that the writing is "reasonably susceptible" to the interpretation suggested by the proponent of the extrinsic evidence then the court should admit the extrinsic evidence. *Id.*

¶ 29 On the other hand, if the court finds that the written language is not "reasonably susceptible" to the interpretation asserted by the proponent of the extrinsic evidence then the court must preclude admission of any extrinsic evidence or argument that would actually vary or contradict the meaning of the written words. *Id.* at 155, 854 P.2d at 1141.

¶ 30 The time at which the judge should make this determination is left to the judge's discretion. "[T]he judge is in the best position to decide how to proceed" and if "[a] proffered interpretation that is highly improbable would necessarily require very convincing evidence[,] ... the judge might quickly decide that the contract language is not reasonably susceptible to the asserted meaning, stop listening to evidence supporting it, and rule that its admission would violate the parol evidence rule." *Id.* (citing 3 Arthur L. Corbin, *Corbin on Contracts* § 542, at 112, § 579, at 420 (1960)).

¶ 31 Of course, if the trial court makes such an evaluation at a motion to dismiss stage, the court is obliged to accept all of the factual allegations of the proponent of the evidence as true. Even so, the question whether written language is "reasonably susceptible" to the meaning asserted is a matter of law, not of fact. *Id.* at 158–59, 854 P.2d at 1144–45; *US West Communications, Inc. v. Ariz. Corp. Comm'n*, 185 Ariz. 277, 280, 915 P.2d 1232, 1235 (App.1996).

---

**5.** The City argues that *Taylor* does not apply because it addresses parol evidence in the context of contracts, not deeds. The City argues that in the case of deeds the merger doctrine applies. The merger doctrine, like the parol evidence rule, specifies that earlier agreements are inadmissible to vary or contradict the written deed terms with respect to title. However, even assuming that the interpretative principles set forth in *Taylor* do not equally apply to the merger doctrine, "[a] grantee who accepts a deed with reversions has entered into a contractual relationship." *Mountain States*, 147 Ariz. at 517, 711 P.2d at 656; *see also Spurlock v. Santa Fe Pac. R. Co.*, 143 Ariz. 469, 474, 694 P.2d 299, 304 (App.1984) ("[I]n construing deeds, the court's role is to give effect to the intent of the contracting parties."). Thus, at least in this case, *Taylor's* interpretive principles apply.

¶ 32 As a result, even under Arizona's more permissive approach to the parol evidence rule, a proponent of parol evidence cannot completely escape the confines of the actual writing. In appropriate circumstances, the court can accept as true the allegations in the complaint and still determine that the written language is not reasonably susceptible of the meaning asserted. Dismissal of any claims depending solely upon such an interpretation is appropriate because the proponent "would not be entitled to relief under any interpretation of the facts 'susceptible of proof.'" *Fidelity Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998).

¶ 33 Long argues that the circumstances bear "directly on [the parties'] intention and their meaning of 'primary municipal airport.'" However, he offers no explanation as to how the language in the reversion clause or the use clause could be interpreted to mean that the City was obliged to construct a second runway on the property. *See U.S. West*, 185 Ariz. at 280, 915 P.2d at 1235 (rejecting purported meaning of settlement agreement because "the agreement contained no language to support the [proposed] interpretation and the meaning of the contract must be determined as a matter of law"). Here, the deed itself permits the property to be used for any use "accessory" to an airport and any other municipal use without any specification that a second runway be built. Long raises no argument that parcel B–3 is not used for purposes accessory to an airport, he merely argues that it must be used for a second runway.

¶ 34 As *Taylor* recognizes, however, one cannot claim that one is "interpreting" a written clause with extrinsic evidence if the resulting "interpretation" unavoidably changes the meaning of the writing in the deed. Even assuming the parties intended parcel B–3 to be used for a second runway, there must be something in the deed that would permit the court to find that the deed's language is amenable to an interpretation specifying that the property must be used only for that purpose. In the absence of such language, the allegations in Long's complaint are not sufficient to overcome the requirements of even the more permissive parol evidence rule adopted in Arizona. *See Taylor*, 175 Ariz. at 152, 854 P.2d at 1138 ("the parol evidence rule prohibits extrinsic evidence to vary or contradict, ... the agreement") (citing 3 Corbin § 543, at 130–34). We thus hold that the trial court did not err in determining that parol evidence was inadmissible for purposes of establishing that parcel B–3 was to be held for the construction of a second runway.[6]

### III. Statute Of Frauds

¶ 35 The trial court also dismissed the complaint finding that the assertions as to the deed's meaning did not satisfy the statute of frauds. The statute of frauds precludes a party from bringing a court action to enforce an unwritten agreement for the transfer of an interest in real property. A.R.S. § 44–101(6) (2003). Arizona recognizes, however, that an agreement is removed from the statute of frauds when one party fully performs. *Cavanagh v. Kelly*, 80 Ariz. 361, 364, 297 P.2d 1102, 1104 (1956); *Wilson v. Metheny*, 72 Ariz. 339, 343, 236 P.2d 34, 37 (1951); *In re MacDonald's Estate*, 4 Ariz.App. 94, 99, 417 P.2d 728, 733 (1966).

¶ 36 Long argues that he fully performed his part of the agreement by transferring the property to the City.[7] The City does not dispute Long's assertion of full performance. It argues, however, that the doctrine of full performance requires that the performance be "unequivocally referable" to

---

6. In his reply, Long argues for the first time that parol evidence is admissible to show the true consideration for a contract or deed. However, arguments raised for the first time in the reply brief are waived. *State v. Watson*, 198 Ariz. 48, 51, ¶ 4, 6 P.3d 752, 755 (App.2000); *State v. Guytan*, 192 Ariz. 514, 520, ¶ 15, 968 P.2d 587, 593 (App.1998) (citation omitted). Even were we to consider the argument, the cases offered by Long all predate *Taylor* and are called into question by its holding.

7. The City alleges that Long has waived this issue on appeal by not raising it in the trial court. Long, however, correctly points out that he raised the issue of full performance at oral argument on the City's motion to dismiss.

the oral contract and that Long fails to demonstrate that his performance complies with that requirement. As Long points out, however, the "unequivocally referable" requirement applies to the doctrine of part performance rather than full performance. *Gene Hancock Constr. Co. v. Kempton & Snedigar Dairy,* 20 Ariz.App. 122, 125, 510 P.2d 752, 755 (1973) ("Part performance necessary to take an oral contract out of the statute of frauds must be unequivocably [sic] referable to the contract."), *disavowed on other grounds by Gibson v. W.D. Parker, Trust,* 22 Ariz.App. 342, 345, 527 P.2d 301, 304 (1974). Part performance and full performance are separate and distinct exceptions to the statute of frauds. *Conopco, Inc. v. McCreadie,* 826 F.Supp. 855, 872 (D.N.J.1993) ("[D]octrine of part performance [is] an equitable doctrine wholly separate from the principle that full performance by one party takes a contract out of the Statute of Frauds.") (citing 2 Arthur L. Corbin, *Corbin on Contracts* § 459, at 582 (1950 & Supp.1992)). The City offers no other argument in opposition to Long's "full performance" claim.

¶ 37 We determine therefore that the "full performance" exception to the statute of frauds applies and Long's claims based on the alleged oral contract are not barred.

## IV. The Counts In The Complaint

### A. Claims for Specific Performance, Resulting Trust and Quiet Title

¶ 38 We agree with the trial court that neither the reversion clause nor the use restriction clause is "reasonably susceptible" of an interpretation that parcel B–3 must be held for a second runway. Long's claims for resulting trust (count five) and quiet title (count six), as pleaded in the complaint, are based on his contention that the City breached its understandings with Long and triggered the reversion clause by entering the Ryan Companies lease that precludes a second runway on parcel B–3. Long's claim for specific performance (count one) is based on the deed's use restriction clause. The only basis on appeal on which Long asserts the City's violation of these clauses is its failure to hold the property for construction of a second runway. Because we have already

determined that the language in the clauses is not reasonably susceptible to Long's proffered interpretation, Long is not entitled to introduce extrinsic evidence of this interpretation. Thus, dismissal of the claims for quiet title, resulting trust and specific performance was appropriate and we affirm.

### B. Promissory Estoppel

¶ 39 Long's claim for promissory estoppel is based on alleged promises by City representatives that parcel B–3 would be used for construction of a second runway. Long requests that the City be required to specifically perform those promises. The trial court dismissed this claim based on the statute of frauds. We affirm on other grounds. *See Chandler Med. Bldg. Partners v. Chandler Dental Group,* 175 Ariz. 273, 278, 855 P.2d 787, 792 (App.1993) (stating that appellate court may affirm trial court if it reaches right result).

¶ 40 Equitable estoppel "may apply against the state only when ... its application will not substantially and adversely affect the exercise of governmental powers." *Valencia Energy Co. v. Ariz. Dep't of Rev.,* 191 Ariz. 565, 578, ¶ 40, 959 P.2d 1256, 1269 (1998). Further, the alleged promise must bear "some considerable degree of formalism under the circumstances" and "must be taken by or have the approval of a person authorized to act in the area under consideration." *Id.* at 577, ¶ 36, 959 P.2d at 1268.

¶ 41 Even accepting all of the allegations of Long's complaint as true, Long does not plead, nor does he demonstrate with the documents subsequently submitted to the trial court, that the promise alleged bears "some considerable degree of formalism under the circumstances," or that it was made by or had the approval of "a person authorized to act in the area under consideration." *Id.* While the maps accompanying the 1981 master plan do show a potential second runway being built on parcel B–3, the plan itself specifies that the second runway is only recommended for consideration by the City. The master plan thus makes no formalized promise to Long that such a runway will ever be built and cannot constitute a basis for equita-

bly estopping the City. In the absence of a formalized written promise, there can be no basis for estoppel. *Open Primary Elections Now v. Bayless,* 193 Ariz. 43, 47, ¶ 14, 969 P.2d 649, 653 (1998) (affirming dismissal of promissory estoppel argument because "[e]ven under the facts as alleged by appellants [the government officials] never reduced the alleged agreement to writing, and no degree of formality characterized the purported agreement").

¶ 42 At oral argument on the motion to dismiss, Long produced to the trial court a letter from Quentin Tolby, a Glendale City Councilman at the time Long donated parcel B–3 to the City. In that letter, Tolby indicates that parcel B–3 was intended to be used for a second runway and he believed that using the property for some other purpose would violate the agreement between the City and Long. However, neither Tolby nor any other city official acting unilaterally was "authorized to act" to bind the City to use parcel B–3 for any particular purpose. All legal action by a public entity must occur at a public meeting. A.R.S. § 38–431.01 (2001). Legal action taken in violation of the open meeting law is null and void and of no legal effect. *Johnson v. Tempe Elementary Sch. Dist.,* 199 Ariz. 567, 570, ¶ 17, 20 P.3d 1148, 1151 (App.2000).[8] For the above reasons, therefore, we affirm the dismissal of Long's estoppel claim against the City.

## C. Reformation And Rescission Claims

¶ 43 Based on its determinations regarding the statute of limitations, the statute of frauds, and the parol evidence rule, the trial court summarily dismissed Long's alternative claims for reformation of the warranty deed (count three) and for rescission (count four) without discussion.

¶ 44 As explained above, we reverse the trial court's determinations on the statute of limitations and the statute of frauds issues. Further, the parol evidence rule does not apply to reformation claims. *McNeil v. Attaway,* 87 Ariz. 103, 110, 348 P.2d 301, 305 (1959) (admitting parol evidence in reformation action to prove prior express agreement because purpose of action is to conform instrument to actual contract negotiated by the parties); *Rempt v. Borgeas,* 120 Ariz. 36, 38, 583 P.2d 1356, 1358 (App.1978) (admitting parol evidence where prior agreement existed and, because of mutual mistake of fact, instruments did not express true agreement of parties). Nor, in a rescission case, does the parol evidence rule bar evidence establishing misrepresentation or mistake. Misrepresentation and mistake can provide a basis for rescission. *Isaak v. Mass. Indem. Life Ins. Co.,* 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981); *see also Hubbs v. Costello,* 22 Ariz.App. 498, 501, 528 P.2d 1257, 1260 (1974); *Lehnhardt,* 105 Ariz. at 144, 460 P.2d at 639. Thus, we are unable to say at this point in the proceeding that Long would not be entitled to relief under these claims under any facts susceptible of proof. *Fidelity Sec.,* 191 Ariz. at 224, ¶ 4, 954 P.2d at 582.

¶ 45 The City argues that we should nevertheless affirm dismissal of Long's reformation claim because Long must show fraud, inequitable conduct, or knowledge of the mistake on the City's part to obtain reformation of a deed. However, Long cites *Yano v. Yano,* 144 Ariz. 382, 697 P.2d 1132 (App. 1985), for the proposition that in the case of a donative transfer, as opposed to a contract case, the donor need only establish that he did not give what he intended to support a claim for reformation. Thus, he adds, as opposed to a matter of contract, the donor need not show fraud, inequitable conduct or knowledge by the donee of the mistake to obtain reformation. *Isaak,* 127 Ariz. at 584, 623 P.2d at 14.

¶ 46 The City claims that *Yano* is inapplicable because the *Yano* court limited the holding to the specific facts of that case. After a review of *Yano* we find no such limitation. We thus decline to uphold the trial court's dismissal on this ground.

¶ 47 Nevertheless, on remand, Long bears the burden of establishing that he had the intent to give parcel B–3 to the

---

8. Nor would Tolby be allowed to testify as to the intent of the City in its dealings with Long. *Golder v. Dep't of Rev.,* 123 Ariz. 260, 265, 599 P.2d 216, 221 (1979); *City of Tucson v. Woods,* 191 Ariz. 523, 528, 959 P.2d 394, 399 (App. 1997).

City for the purpose of building a second runway on that parcel, and failed to so specify. Long cannot achieve reformation by retroactively attributing to himself a specific intent that he had not formulated at that time. Further, Long must meet this burden by clear and convincing evidence. *Berger v. Bhend,* 79 Ariz. 173, 179, 285 P.2d 751, 754 (1955) ("To sustain a reformation of a deed of conveyance the material facts must be proved by evidence that is clear, convincing and satisfactory."); *Corn v. Branche,* 74 Ariz. 356, 358, 249 P.2d 537, 538 (1952) ("In the absence of clear and convincing evidence to support the plaintiff's allegation of mistake, this court will not trifle with or cause to be reformed a duly executed and valid deed.") (citation omitted). Finally, as *Yano* specifies, the City is entitled to raise appropriate defenses to Long's reformation claim.

¶ 48 Because Long is entitled to proceed on his claims for reformation and rescission, we reverse the trial court's dismissal of these claims. Because we reverse in part the dismissal of Long's claims against the City, we also vacate the award of attorneys' fees to the City to abide a final judgment on Long's remaining claims.

## CONCLUSION

¶ 49 We affirm the trial court's conclusion that the deed's language is not reasonably susceptible to the interpretation offered by Long. Thus, we affirm the trial court's dismissal of the specific performance, resulting trust, and quiet title claims. For the reasons detailed above, we also affirm the trial court's dismissal of Long's promissory estoppel claim. However, we find that the trial court erred in dismissing Long's claims for reformation and rescission, and we vacate the trial court's award of attorneys' fees to the City. We remand to the trial court for further proceedings consistent with this opinion.

CONCURRING: JAMES B. SULT, Presiding Judge and MAURICE PORTLEY, Judge.