NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARTIN OGDEN,
*Plaintiff/Appellant,*

*v.*

DIGITAL INTELLIGENCE SYSTEMS LLC,
*Defendant/Appellee.*

No. 1 CA-CV 18-0048
FILED 12-13-2018

Appeal from the Superior Court in Maricopa County
No.  CV2017-053771
The Honorable Aimee L. Anderson, Judge, *Retired*

**AFFIRMED IN PART; REVERSED IN PART**

COUNSEL

Lewis, Brisbois, Bisgaard & Smith, LLP, Phoenix
By Barrett N. Lindsey
*Counsel for Plaintiff/Appellant*

Littler Mendelson, PC, Phoenix
By Kristy Peters, Joshua Waltman
*Counsel for Defendant/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

_____

**J O H N S E N**, Judge:

¶1            Martin Ogden appeals the superior court's dismissal of his contract claim against Digital Intelligence Systems, LLC ("DISYS"). For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

¶2            Ogden worked for DISYS from December 2013 until it terminated him in June 2015. Ogden thereafter asserted several claims arising from his employment, which the parties ultimately resolved by way of a Settlement and Release Agreement (the "Settlement Agreement").

¶3            In the Settlement Agreement, Ogden agreed to release all claims against DISYS, and DISYS agreed to pay him as follows:

> a. Settlement Payment.  Within 3 business days of the Effective Date of this Agreement, and on condition that Ogden comply with the terms of this Agreement, DISYS shall pay to Ogden the "Settlement Payment" of $16,296.  The Settlement Payment shall be paid in two separate amounts as follows:

> i. DISYS shall make a lump-sum payment in the amount of $8,296 (the "Settlement Payment") to be direct-deposited into the bank account on file for Ogden, in compromise for those claims asserted by Ogden in the Litigation that do not relate to the payment of wages and for amounts attributed as consideration for the general release and confidentiality provisions contained herein.  DISYS will report such payment to federal and state tax authorities on an IRS Form 1099 as determined by DISYS to be required by law.

> ii. DISYS shall make a payment to be direct-deposited into the bank account on file for Ogden in the gross amount of $8,000 less requisite payroll deductions, in compromise for his

claims in the Litigation for unpaid wages. DISYS will report such payment to federal and state tax authorities on an IRS Form W-2 as determined by DISYS to be required by law.

**¶4** According to Ogden's complaint, several days before the Settlement Agreement was signed, DISYS sent him an email agreeing to settle for an amount that would result in him receiving a total "take-home" of no less than $13,810. Although DISYS made the two payments specified in the Settlement Agreement, Ogden alleged DISYS breached the Settlement Agreement because its payments amounted to "a total, 'take-home' settlement payment amount of $10,341, which made for a 'take-home' payment amount deficit of $3,469, or 25.1% less than what DISYS was contractually obligated to pay."

**¶5** DISYS moved to dismiss the complaint pursuant to Arizona Rule of Civil Procedure 12(b), arguing it did not breach the Settlement Agreement. To its motion, it attached a copy of the Settlement Agreement and evidence it made two payments to Ogden totaling $16,296.[1]

**¶6** The superior court granted DISYS's motion, granted its application for attorney's fees and entered final judgment pursuant to Arizona Rule of Civil Procedure 54(c). Ogden timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).[2]

## DISCUSSION

**A. Standard of Review.**

**¶7** We review *de novo* a superior court's ruling on a motion to dismiss. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012). In determining whether a complaint states a claim for relief, "Arizona courts look only to the pleading itself." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz.

---

[1] Ogden did not argue in the superior court that DISYS's submission of the Settlement Agreement and the tax statements, which arguably were documents intrinsic to the complaint, required the court to convert the motion to dismiss to a motion for summary judgment. *See Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 63-64, ¶¶ 10, 13-14 (App. 2010).

[2] Absent material revision, we cite the current version of a statute or rule.

417, 419, ¶ 7 (2008). Courts must "assume the truth of the well-pled factual allegations" and resolve all reasonable inferences in the plaintiff's favor. *Id*. Mere conclusory statements, however, "are insufficient to state a claim upon which relief can be granted." *Id*. Dismissal of a complaint for failure to state a claim is inappropriate unless "the plaintiff would not be entitled to relief under any interpretation of the facts." *Bunker's Glass Co. v. Pilkington PLC*, 202 Ariz. 481, 484, ¶ 9 (App. 2002).

## B.    The Settlement Agreement.

**¶8**        As recited above, the Settlement Agreement stated that DISYS was to pay Ogden as follows: (1) "a lump-sum payment in the amount of $8,296," and (2) "a payment . . . in the gross amount of $8,000 less requisite payroll deductions." With its motion to dismiss, DISYS presented evidence it made those payments, and, on appeal, Ogden does not dispute that evidence. He argues, however, that, as his complaint alleged, on April 15, 2016, 11 days before he executed the Settlement Agreement, a representative of DISYS emailed him "indicating DISYS' intent to meet Ogden's minimum settlement payment demand of a 'take-home' payment amount of no lesser [sic] than that of $13,810." Ogden argues DISYS breached the Settlement Agreement because the payments it made did not result in the "take-home" amount stated in the email.

**¶9**        Contract interpretation is a question of law we review *de novo*. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). We construe a contract to determine and enforce the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993). We consider the plain meaning of the words in the context of the contract as a whole. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 259 (App. 1983).

**¶10**        Ogden's complaint effectively alleged that an email DISYS sent him 11 days before he signed the Settlement Agreement was parol evidence that modified the express terms of the Settlement Agreement. Under Arizona's approach to parol evidence, "the trial court, before admitting external evidence of the intent of the parties to interpret a written agreement, must first consider the allegations made by the proponent of the extrinsic evidence as to the appropriate interpretation of the writing in light of the extrinsic evidence alleged." *Long v. City of Glendale*, 208 Ariz. 319, 328, ¶ 28 (App. 2004); *accord Taylor*, 175 Ariz. at 154. "Next, the court should consider the language of the writing. If the court finds that the writing is 'reasonably susceptible' to the interpretation suggested by the proponent of the extrinsic evidence then the court should admit the extrinsic evidence." *Long*, 208 Ariz. at 328, ¶ 28 (quoting *Taylor*, 175 Ariz. at 156). "[I]f the court

finds that the written language is not 'reasonably susceptible' to the interpretation asserted by the proponent of the extrinsic evidence then the court must preclude admission of any extrinsic evidence or argument that would actually vary or contradict the meaning of the written words." *Long*, 208 Ariz. at 328, ¶ 29 (quoting *Taylor*, 175 Ariz. at 156).

¶11　　　　In reviewing the dismissal of Ogden's complaint, we accept as true his allegation that he received an email from DISYS "indicating DISYS' intent" to pay Ogden a take-home amount of at least $13,810. *See Long*, 208 Ariz. at 328, ¶ 31. The Settlement Agreement, however, is not reasonably susceptible to Ogden's contention, based on the email, that DISYS promised in the settlement to make payments that together would result in a "take-home" payment of $13,810. The Settlement Agreement does not refer to a "take-home" or net amount; instead, it speaks very specifically and explicitly of a "lump-sum payment in the amount of $8,296" and a "gross amount of $8,000 less requisite payroll deductions." The plain and only meaning of the language of the Settlement Agreement is that, notwithstanding any email exchange before the parties finalized the Settlement Agreement, DISYS did not covenant to guarantee Ogden a "take-home" sum of any particular amount. "It is not within the province . . . of the court to alter, revise, modify, extend, rewrite or remake an agreement . . . [w]here the intent of the parties is expressed in clear and unambiguous language." *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472 (1966) (citation omitted).

¶12　　　　Although Ogden suggests that additional evidence would show that DISYS promised to pay more than the sum specified in the Settlement Agreement, he did not identify that evidence in the superior court, nor did he do so on appeal. In any event, such evidence would be barred by the integration clause in the Settlement Agreement. That provision stated: "There are no other agreements, written or oral, express or implied, between Ogden and DISYS with respect to the subject matter hereof." "Arizona has adopted the Restatement (Second) of Contracts § 213 (1981) as the general rule of contract law regarding integration clauses." *Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, __, ¶ 14 (App. 2018) (quotation omitted). Pursuant to the Restatement, "[w]hether a binding agreement is completely integrated or partially integrated, it supersedes inconsistent terms of prior agreements." Restatement (Second) of Contracts § 213 cmt. b (1981).

¶13　　　　Ogden argues the integration clause does not prevent the admission of parol evidence to resolve contract ambiguity. As we have concluded, however, the Settlement Agreement is not ambiguous. And, as

DISYS contends, the email evidence Ogden relies on is plainly inconsistent with the Settlement Agreement.

**¶14** More generally, Ogden argues the superior court erred by dismissing his complaint before discovery could be taken on whether he and DISYS had a "meeting of the minds" regarding the material terms of the Settlement Agreement. Whether "written language is reasonably susceptible to the meaning asserted is a matter of law, not of fact." *Long*, 208 Ariz. at 328, ¶ 31 (quotation omitted). Because the plainly written Settlement Agreement is not reasonably susceptible to the interpretation Ogden offers, the court did not err by dismissing his complaint. *See Long*, 208 Ariz. at 328, ¶ 29.[3]

## C. Award of Attorney's Fees.

**¶15** In dismissing Ogden's complaint, the superior court awarded DISYS attorney's fees and costs totaling $19,874 pursuant to A.R.S. §§ 12-341 and 12-341.01 (2018). On appeal, Ogden argues the court lacked the power under the Settlement Agreement and § 12-341.01 to award attorney's fees to DISYS.

**¶16** Section 12-341.01 allows the court to award fees to the successful party in an action arising out of contract. But the statute "is inapplicable by its terms if it effectively conflicts with an express contractual provision governing recovery of attorney's fees." *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 368, ¶ 14 (2017) (quotation omitted). We review *de novo* whether the applicable contract allows for attorney's fees. *Grosvenor*, 222 Ariz. at 593, ¶ 9.

**¶17** Here, Ogden argues the superior court erred by awarding fees under Paragraph Six of the Settlement Agreement, which provides:

> The prevailing Party in a proceeding to enforce this Agreement shall be entitled to recover . . . its reasonable and necessary court costs and litigation expenses incurred in the

---

[3] Ogden also argues a prior lawsuit that he filed abated this action because both have a substantial identity of parties and subject matter. He contends that for that reason, the superior court should have consolidated this action with the prior or stayed the current action. Ogden, however, waived this argument by failing to raise it before the superior court granted the motion to dismiss. *See Conant v. Whitney*, 190 Ariz. 290, 293 (1997).

> successful prosecution of such litigation; however, each Party
> shall incur its own costs for attorneys' fees.

Although this provision states that "each Party" shall bear its own attorney's fees, DISYS argues it does not apply because Ogden's claim for breach of the Settlement Agreement was not an action to *enforce* the Settlement Agreement.

¶18        Ogden's complaint alleged DISYS "was contractually obligated to pay Plaintiff a 'take-home' settlement payment amount of no lesser [sic] than that of $13,810 [and] [DISYS] failed to fulfill its contractual obligation . . . , which constituted a breach of the Settlement Agreement." In other words, Ogden sued to enforce the Settlement Agreement by compelling DISYS to pay an amount he alleged DISYS "was contractually obligated to pay." Further, his complaint sought damages for the alleged breach.

¶19        DISYS does not explain how an action Ogden might bring to "enforce" the Settlement Agreement would be any different from the complaint he filed seeking damages for DISYS's alleged breach of contract. To the contrary, a complaint alleging breach and seeking resulting damages is (along with an action for specific performance) among the quintessential actions to "enforce" a contract. *See Kammert Bros. Enters. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 308 (1967) (suit seeking damages for breach of contract was "buyer's means of enforcing its rights under the contract" under provision allowing fees for suit "to enforce or cancel" contract).

¶20        DISYS also contends Paragraph Six did not bar its fee claim because Ogden, not DISYS, commenced the case. DISYS argues that the reference to the "successful prosecution" of an enforcement action implies that the provision precludes a fee award to the plaintiff in such a case but not the defendant. We do not agree that the provision distinguishes between the litigants in that fashion. Instead, it states that "each Party shall incur its own costs for attorneys' fees."

¶21        Because the Settlement Agreement barred recovery of fees by the prevailing party in an action to enforce the agreement, the superior court lacked the power under § 12-341.01 to award fees.

**CONCLUSION**

**¶22** For the reasons set forth above, we affirm the superior court's judgment, except we reverse its award of attorney's fees in favor of DISYS. Because both parties partially prevailed on appeal, we award costs to neither.



AMY M. WOOD • Clerk of the Court
FILED: AA