NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

KELLY SARBER,
*Plaintiff/Appellant*,

v.

LA PAZ COUNTY,
*Defendant/Appellee*.

No. 1 CA-CV 22-0045
FILED 11-10-2022

Appeal from the Superior Court in Maricopa County
No. CV2019-006977
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

COUNSEL

Dalimonte Rueb Stoller, LLP, Phoenix
By Paul L. Stoller, Ashley Carrington Crowell
*Counsel for Plaintiff/Appellant*

Gust Rosenfeld, PLC, Phoenix
By Charles W. Wirken
*Counsel for Defendant/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Randall M. Howe and Judge D. Steven Williams joined.

_____

**W E I N Z W E I G**, Judge:

¶1            Kelly Sarber appeals the superior court's grant of La Paz County's motion for summary judgment.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### *Landfill Project*

¶2            Ms. Sarber is a business consultant, doing business as Strategic Management Group.  On September 17, 2012, during an open meeting, the La Paz County Board of Supervisors unanimously authorized County Administrator Dan Field "to enter into a consulting agreement with [Sarber] for preparation of the Request for Proposals for the operation of the La Paz County Landfill, to manage the bidder meetings and inquiries, [and] to assist the County with negotiation of a Landfill host agreement and marketing economic development opportunities on contiguous Landfill lands."

¶3            Sarber contends she and the County entered a consulting agreement ("2012 Agreement") after the vote, but the County contends she never signed or returned the agreement.  At any rate, the 2012 Agreement defined the scope of engagement:

> **ENGAGEMENT AND SCOPE**.  La Paz County hereby retains [Sarber] to provide the advice and services related to the development, operation and management of the 160-acre permitted Subtitle D La Paz County Landfill ("Landfill") and the contiguous land 480 acres of land owned by the County ("Additional Land") and to provide for on-going consulting services with the goal of optimizing the economic value of the Landfill and the Additional Land to the County.

¶4            The 2012 Agreement contained a merger clause.  The "compensation" section provided: "For services rendered by Consultant under the Agreement, the County will require that the Operator [of the

landfill] pay the Consultant an amount equal to 10% of all fees, royalties, rents or similar amounts payable to the County under the Operating Agreement, for the term of the Operating Agreement." But this section was unfinished, using a placeholder to "[ADD FEE LANGUAGE]."

¶5 After a few months, Sarber asked Administrator Field to change her compensation from commission to monthly fees. She and the County thus entered a second consulting agreement in February 2013, ("2013 Agreement"), which restated much of the 2012 Agreement, adding that Sarber would be paid $12,500 per month "for each calendar month during the term of this Agreement." Six months later, Sarber and the County entered a third agreement, the "Fee Agreement," which explained the County would pay Sarber a percentage of fees received under a landfill operation agreement.

### Solar Energy Project

¶6 Four years after the 2012 Agreement, Sarber pitched a new project to the Board of Supervisors involving a solar energy development. She explained that the Bureau of Land Management (BLM) was close to approving an interstate electric power transmission line that would cross from California into the County. And so, she advised the County to buy federal land near the power line on which to build a solar energy project, and to then retain a solar energy developer to build and operate the solar energy project. The Board of Supervisors told Sarber to "move forward" with the land purchase in November 2016.

¶7 As she continued to work on this project in 2017, Sarber asked the County to enter into a new consulting agreement that would cover the solar energy project. The County refused.

¶8 The Board of Supervisors later approved the solar energy project, awarding the development to a solar energy developer in December 2017. The solar energy project was built about 26 miles away from the landfill. Sarber expects the solar energy project to generate more than $500 million for the County.

### This Lawsuit

¶9 Sarber sued the County for a declaratory judgment that Sarber and the County had an oral agreement, formed in 2013, for Sarber to receive a 10% commission on the solar energy project. Sarber twice amended her complaint, pointing each time to the oral agreement.

¶10          The County eventually moved for summary judgment, arguing the alleged oral agreement was unenforceable because it was never approved in an open meeting under Arizona law.  At that point, for the first time, Sarber claimed she sued under the 2012 Agreement, which *did* meet the open meeting laws.  On reply, the County argued that summary judgment was still appropriate under the plain and unambiguous terms of the 2012 Agreement, which was limited to Sarber's consulting services on the landfill "and the contiguous land 480 acres."  Only then, after the briefs were in, did Sarber supply the newly minted declaration of Administrator Field, who said that "contiguous" meant "not contiguous," and his definition would include "all County-owned land other than the other encumbered properties then owned by the County on which development was not feasible."

¶11          The superior court granted summary judgment to County based in part on the plain and unambiguous terms of the 2012 Agreement, which limited consulting services to "the landfill or the contiguous 480 acres," and "[t]he renewable energy project has nothing to do with landfill operations."   The court considered Administrator Field's belated declaration and rejected it, recognizing it contradicted the 2012 Agreement's plain language and Field's prior sworn testimony.

¶12          Just days later, Sarber moved for reconsideration, offering new theories and her own new affidavit.  The superior court denied the motion upon a careful and detailed analysis, recognizing that Sarber's argument had changed from "the County promised to sign an agreement to compensate Sarber for the [solar project] and failed to do so," to the County breached the 2012 Agreement.  The court then reiterated but refined the issue:

> Despite all of the rhetoric, the case comes down to one simple premise.  In order for plaintiff to prevail, the Court would conclude that "contiguous" does not mean "contiguous." The 2012 Consulting Agreement is not reasonably susceptible to plaintiff's interpretation.  The Consulting Agreement does not, under any reasonable interpretation, entitle plaintiff to compensation for a project located many miles away from the Landfill and the contiguous parcel. Indeed, plaintiff's own position during the bulk of this case acknowledged that there was no written agreement that entitled her to compensation.

¶13          Sarber appeals.  We have jurisdiction.  *See* A.R.S. § 12-2101(A)(1).

4

**DISCUSSION**

**¶14** Sarber argues the superior court erroneously granted summary judgment to the County because the 2012 Agreement required the County to compensate her for consulting services on the solar energy project, and the 2012 Agreement complied with Arizona's open meeting laws. Because we hold that the 2012 Agreement does not promise compensation for consulting services on the solar energy project, we do not reach the open meeting issue. *See Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 178 (App. 1984) (appellate court need not decide other issues if it can resolve the case on the first issue).

**¶15** We review de novo the superior court's grant of summary judgment, *Jackson v. Eagle KMC LLC*, 245 Ariz. 544, 545, ¶ 7 (2019), construing the facts in the light most favorable to the non-moving party, *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012). Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

**¶16** Contract interpretation is a question of law we review de novo. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). We construe a contract to determine and enforce the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993). Arizona courts consider "the plain meaning of the words" of a contract in the context of the whole contract to determine the meaning of the document. *Terrell v. Torres*, 248 Ariz. 47, 49-50 (2020).

**¶17** Sarber waived most of her arguments by first raising them on a motion for reconsideration before the superior court. *See Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15 (App. 2006) ("Generally we do not consider arguments on appeal that were raised for the first time at the trial court in a motion for reconsideration."). Even when considered, however, Sarber's arguments fail under the 2012 Agreement's plain language.

**¶18** Sarber contends the 2012 Agreement included her consulting services for the solar energy project. Her arguments cannot withstand the plain and unambiguous scope of the 2012 Agreement, which does not envision or contemplate the solar energy project. According to the first paragraph of the 2012 Agreement, the County hired Sarber to provide consulting services on the "[l]andfill" and "contiguous 480 acres of land

owned by the County." The solar energy project is not located or operated on the landfill or the contiguous 480 acres.

¶19        Given that language, Sarber relies on extrinsic evidence of the parties' intent to contradict the 2012 Agreement. But that evidence is inadmissible under Arizona law, which has adopted a two-part test to determine the admissibility of extrinsic evidence that would vary or contradict the meaning of a contract's written words.

¶20        The superior court must "first consider the allegations made by the proponent of the extrinsic evidence as to the appropriate interpretation of the writing in light of the extrinsic evidence alleged." *Long v. City of Glendale*, 208 Ariz. 319, 328, ¶ 28 (App. 2004). Here, like Humpty Dumpty, Sarber insists: "When *I* use a word, it means just what I choose it to mean—neither more nor less." Lewis Carroll, *Alice's Adventures in Wonderland & Through the Looking Glass* 124-25 (N.Y., The MacMillan Co. 1897). She offered Field's declaration as external evidence that "contiguous" meant "not contiguous" in the 2012 Agreement, and the parties instead intended the word to subsume "all County-owned land other than the other encumbered properties then owned by the County on which development was not feasible."

¶21        Next, the court must decide if the contract's language is "reasonably susceptible to the interpretation suggested by the proponent of the extrinsic evidence." *Long*, 208 Ariz. at ¶ 28. If yes, "the court should admit the extrinsic evidence," but if not, "the court must preclude admission of any extrinsic evidence or argument." *Id.* at ¶ 29.

¶22        The 2012 Agreement is not reasonably susceptible to Sarber's interpretation, which reimagines the word "contiguous land" to capture an unknown universe of land that might or might not be acquired in the future. "Contiguous" is defined in Black's Law Dictionary as "[t]ouching at a point or along a boundary." *Contiguous*, Black's Law Dictionary (11th ed. 2019). And the record shows the solar energy project was not built on or aside the landfill and contiguous 480 acres. And as the superior court noted, "[the solar] energy project has nothing to do with landfill operations." Because the 2012 Agreement is not reasonably susceptible to Sarber's interpretation, we do not consider her external evidence.

**CONCLUSION**

**¶23** We affirm. We grant the County's request for attorney fees as the prevailing party on appeal under A.R.S. § 12-341.01. We also grant the County its costs upon compliance with ARCAP 21.

