NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TRAILHEAD RESTRICTION, LLC, *Plaintiff/Appellant*,

*v.*

CITY OF PHOENIX, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0735
FILED 10-3-2023

Appeal from the Superior Court in Maricopa County
No.  CV2020-009035
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

McGill Law Firm, Scottsdale
By Gregory G. McGill
*Counsel for Plaintiff/Appellant*

Burch & Cracchiolo, P.A., Phoenix
By Casey S. Blais, Andrew Abraham, Daryl Manhart
*Counsel for Defendant/Appellee City of Phoenix*

Fidelity National Law Group, Phoenix
By Nathaniel B. Rose
*Counsel for Defendant/Appellee Fidelity National Title Insurance Company*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

---

**K I L E Y**, Judge:

¶1 Trailhead Restriction, LLC ("Trailhead") appeals the grant of summary judgment on its claims against the City of Phoenix (the "City") and Fidelity National Title Insurance Company f/k/a Lawyers Title of Arizona, Inc. ("Lawyers Title"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 This dispute arises out of a decades-old land swap transaction involving property in the Laveen area of the foothills of South Mountain in Phoenix. Viewed in the requisite light most favorable to Trailhead as the party against whom summary judgment was entered, *see Kim v. Wong*, 253 Ariz. 247, 248, ¶ 9 (App. 2022), the evidence shows that Trailhead's predecessor-in-interest Barbara Nerison ("Nerison"), along with her now-deceased husband James Nerison, entered into a land swap transaction with the City in 1977. As part of the transaction, the Nerisons sold 6.13 acres of hillside land (the "hillside property"), located in what the parties refer to as "South Mountain Preserve Lot 13," to the City for $17,100 while the City simultaneously sold 4.4 acres of nearby land to the Nerisons for $22,600. According to Trailhead, this exchange allowed the Nerisons to acquire developable land in the South Mountain foothills to be subdivided into "buildable lots" for resale while the City acquired "pristine hillside property" in its "natural state" to add to the South Mountain Preserve.

¶3 The terms of the parties' agreement also required the Nerisons to purchase, from third parties John and Ila Christensen, a parcel of land (the "Christensen property") located between the hillside property and the 4.4 acres the Nerisons acquired from the City. As Nerison later explained, she and her husband "had to agree," as "part of the [land swap] deal," that the Christensen property would be added to the property they bought from the City and then subdivided for resale. According to Nerison, this arrangement gave the buyers of the subdivided lots "additional square footage" to help meet "setback and permitting requirements" while generating additional property tax revenue for the City.

¶4        The deeds to the properties that the Nerisons and the City exchanged, signed by the Nerisons and a representative of the City, contain identical language to the effect that the conveyance of the deeded property was subject to "[r]eservations in patents and all easements, rights of way, covenants, conditions, and restrictions as may appear of record."

¶5        The deed to the Christensen property, signed by the Nerisons and the Christensens, similarly provides that the conveyance of the deeded property was subject to "[c]urrent taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record."

¶6        The deed to the Christensen property also contains the following development restriction, which does not appear in the deeds to the other properties involved in the land swap:

> RESTRICTIONS: *That this land remain in its natural state forever. This restriction prohibits construction of any kind or type of* buildings, structures, walls, fences, *improvements or any roads in or upon the property above described.*
>
> IT IS UNDERSTOOD that the above restrictions cannot be removed without a written agreement from all the property owners that adjoin the restricted area, stating they have no objection to its removal.

(Emphasis added.)

¶7        The deeds for all properties involved in the land swap, including the Christensen property, were recorded on the same day, May 17, 1977.

¶8        The Nerisons later subdivided the 4.4 acres they acquired from the City into lots zoned for single-family residences, which they then sold to Gordon Dysthe and other buyers.

¶9        In 2019, the City began constructing trails for hiking and horseback riding on part of the hillside property it purchased from the Nerisons in 1977. Concerned that the presence of hikers and riders on the hillside property would lead to "increased litter," "noise," and "reduc[ed] privacy and . . . property values," Nerison, Dysthe, and the owners of the other subdivided lots formed Trailhead to "facilitate their joint interests in maintaining the natural surroundings in the South Mountain Preserve area." Trailhead requested that the City cease construction of the trails,

3

asserting that the development prohibition in the deed to the Christensen property also applies to the hillside property that was conveyed to the City as part of the same land swap. Responding that the hillside property is subject to no development restrictions, the City continued constructing the trails.

¶10　　　Trailhead then sued the City and Lawyers Title for breach of contract and breach of the implied-in-law covenant of good faith and fair dealing, asserting that the deed and escrow instructions for the 1977 land swap transaction constitute an enforceable contract that prohibits the construction of trails on the hillside property. Trailhead also asserted a claim for promissory estoppel, arguing that its members purchased the subdivided lots in reasonable reliance on the defendants' assurances to the Nerisons that the hillside property would remain undeveloped. In the alternative, Trailhead asserted tort claims against the City, including fraudulent concealment and negligent misrepresentation, and against Lawyers Title for breach of fiduciary duty, alleging that the absence of a development restriction in the deed to the hillside property is attributable to the defendants' negligent or otherwise wrongful conduct.

¶11　　　The City and Lawyers Title each moved for summary judgment, arguing that the hillside property is subject to no development restrictions and that, in any event, various defenses, including the statute of limitations and the statute of frauds, apply to bar Trailhead's claims.

¶12　　　Trailhead responded that the parties to the 1977 land swap transaction intended that the development prohibition set forth in the deed to the Christensen property also apply to the hillside property. Trailhead sought to establish the intent of the parties to the land swap through extrinsic evidence in the form of an affidavit (the "Nerison affidavit") that Nerison signed in 2019 and a declaration (the "Dysthe declaration") that Dysthe signed in 2022.

¶13　　　The superior court granted summary judgment on all of Trailhead's claims. After denying Trailhead's subsequent motion for a new trial and granting the defendants' applications for attorney fees and costs, the court entered the final judgment from which Trailhead appeals. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶14　　　Trailhead argues that the court erroneously granted summary judgment to the City and Lawyers Title. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving

4

party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The moving party is entitled to summary judgment "if the facts produced in support of the [non-movant's] claim or defense have so little probative value . . . that reasonable people could not agree with the conclusion advanced by the [non-movant]." *Kim*, 253 Ariz. at 248, ¶ 9 (cleaned up). We review the grant of summary judgment *de novo*, *id.*, and we will affirm the judgment if it "is correct for any reason, even if that reason was not considered by the court," *Melendez v. Hallmark Ins. Co.*, 232 Ariz. 327, 330, ¶ 9 (App. 2013) (cleaned up).

I. **The Contract for the Sale of the Hillside Property Is Not Ambiguous, and the Court Properly Interpreted It as a Matter of Law.**

¶15        Trailhead argues that issues of fact surrounding the 1977 land swap transaction barred the court from construing the parties' agreement as a matter of law. The court erred, Trailhead maintains, in granting summary judgment instead of allowing a jury to determine whether "the restrictive language" in the deed to the Christensen property was also "intended for the deed to the hillside property but [was] mistakenly omitted."

¶16        In construing a deed, the court "must give effect to the contracting parties' intent." *Paulden Indus. LLC v. Big Chino Materials LLC*, 249 Ariz. 442, 444, ¶ 9 (App. 2020). "If the deed is unambiguous," the court must discern the parties' intent "from the four corners of the document." *Id.* (citation omitted). Trailhead argues that "logic and common sense" compel the conclusion that the Nerisons would not have agreed to restrict development of the Christensen property without insisting on a reciprocal restriction barring development of the adjacent hillside property. But the deed to the hillside property contains no nondevelopment provision, and we "may not add something" to the deed "that is not there." *Id.* at 446, ¶ 23.

¶17        Noting that a contract "regarding real estate may be broader than the deed," Trailhead asserts that the "concurrent escrow documents" form part of the contract for the sale of the hillside property. According to Trailhead, the escrow documents are "not a model of clarity," and the "ambiguities" therein create factual issues regarding the intent of the contracting parties that should have been left to a jury to determine.

¶18        The escrow instructions for Nerison's sale of the hillside property to the City and for the City's sale of 4.4 acres to the Nerisons provide that the two closings were to be concurrent. The escrow

instructions for Nerison's sale of the hillside property also provide in part, "This Escrow is also subject to Deed restrictions (per attached suplemental [*sic*] instructions.)." The attached supplemental instructions, in turn, provide:

> It has been agreed by and between the parties hereto that the above numbered escrow instructions be amended as follows:
>
> *The closing of this escrow is subject to the Seller placing Deed restrictions on the property on or before this escrow closes as described in Exhibit "C" attached and such restrictions being that land so described in Exhibit "C" shall remain in its natural state forever*, prohibiting construction of any kind or type of buildings, structures, walks, fences, improvement or any roads in or upon said described property. The restrictions may not be removed without the consent of all adjoining property owners.

(Emphasis added.) Exhibit C attached to the escrow instructions is the legal description to the Christensen property.

¶19 Read as a whole, the escrow instructions make clear that (1) the City would not sell the 4.4-acre parcel to the Nerisons unless they concurrently sold the hillside property to the City; and (2) neither sale would close unless the Nerisons simultaneously acquired, and placed a development restriction on, the Christensen property. In other words, to complete their intended purchase of the 4.4 acres they sought to develop for resale, the Nerisons were required to agree to prohibit development of the Christensen property. As the City correctly notes, the escrow instructions establish that the Christensen property was to be an undevelopable "buffer between the land the Nerisons wanted to develop and the land the City protects in the Mountain Preserve."

¶20 Nothing in the escrow instructions indicates, however, that the development prohibition set forth in the deed to the Christensen property also applied to any of the other property involved in the land swap. The escrow instructions do not support Trailhead's position that the parties intended the hillside property to be subject to a development restriction that appears only in the deed to the Christensen property.

¶21 Trailhead cites *Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345 (1991), for the proposition that contracts should be construed using a "common sense approach" that takes into account "all surrounding circumstances" rather than "only the text of the agreement." In *Burkons*, the

6

Arizona Supreme Court held that the agreement between parties to a real property purchase transaction could not be construed as a matter of law in view of conflicting provisions among various documents the parties signed to complete the transaction. *Id.* at 349-50. Among other things, the *Burkons* court noted, the escrow instructions provided that the seller's security interest "was to be a first lien" while a separate document subordinated the seller's security interest to that of the lender. *Id.* at 348, 350. In light of these conflicting provisions, the Court held, "the documents cannot as a matter of law be interpreted as an unconditional agreement that [the lender's] lien is to take first position over [the seller's] purchase money lien." *Id.* at 351.

**¶22** Unlike the documents that formed the agreement in *Burkons*, the relevant documents here contain no conflicting provisions that preclude interpreting the parties' agreement as a matter of law. The absence of a development restriction in the deed to the hillside property, coupled with the absence of any indication in the relevant escrow instructions that the parties intended to include such a restriction in the deed, warranted summary judgment on Trailhead's contract claims. *Paulden Indus.*, 249 Ariz. at 444, ¶ 9 (noting that an "unambiguous" deed is construed "from the four corners of the document"); *see also Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588 (1977) ("Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.") (citation omitted).

## II. Trailhead's Proffered Extrinsic Evidence Cannot Be Admitted To Vary the Meaning of the Unambiguous Deed to the Hillside Property.

**¶23** Trailhead argues that the court erred in refusing to consider the Nerison affidavit and the Dysthe declaration when construing the parties' agreement, insisting that those sworn statements support its position that the prohibition on development "was not intended solely for the [Christensen property]" but "was also intended for the hillside parcel."

**¶24** "[T]he parol evidence rule bars admission of extrinsic evidence" to interpret a written contract if such evidence "varies or contradicts the terms of [the] written contract." *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 478, ¶ 52 (App. 2010). The court may consider parol evidence when interpreting a written agreement only if "the court finds the writing is 'reasonably susceptible' to the interpretation suggested by the proponent of the extrinsic evidence." *Long v. City of Glendale*, 208 Ariz. 319, 328, ¶ 28 (App. 2004). The proponent of parol evidence cannot, in other words, offer extrinsic evidence under the guise of "interpreting" a written

agreement "if the resulting 'interpretation' unavoidably changes the meaning of the writing." *Id.* at 329, ¶ 34.

**¶25**        Courts have long applied the parol evidence rule to bar the use of extrinsic evidence to show that real property was conveyed subject to use or ownership restrictions that do not appear in the conveyance instrument. *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 67-68, ¶¶ 20-21 (App. 2011) (rejecting affidavits offered to show that easement granted for "pedestrian and passenger" vehicles was intended for emergency vehicles only because "the contract language [was] not reasonably susceptible to the interpretation" set forth in the affidavits) (cleaned up); *Valento v. Valento*, 225 Ariz. 477, 484, ¶¶ 21-22 (App. 2010) (holding that, where the deed's language was "unambiguous in that [the grantors] conveyed the property interest to [their son] and [his wife] jointly," the parol evidence rule prohibited testimony that the grantors intended the property to be gifted to their son alone).

**¶26**        Because, as the superior court correctly found, the deed to the hillside property is unambiguous, accepting Trailhead's proffered extrinsic evidence would "unavoidably change[]" the deed's meaning by adding a use restriction. *See Long*, 208 Ariz. at 329, ¶ 34. The parol evidence rule therefore precluded the court from considering the proffered extrinsic evidence when construing the deed.

**¶27**        Asserting that "[m]isrepresentation and mistake can provide a basis for rescission," Trailhead argues that "in a rescission case, . . . the parol evidence rule" does not "bar evidence establishing misrepresentation or mistake." This contention, even if true, is irrelevant because Trailhead never asserted a rescission claim.

### III.    In Any Event, Trailhead's Proffered Extrinsic Evidence Is Insufficient To Defeat Summary Judgment.

**¶28**        Even if the parol evidence rule did not preclude the court from considering Trailhead's proffered extrinsic evidence, that evidence would not help Trailhead. An affidavit offered to support or defeat summary judgment must "set out facts that would be admissible in evidence." Ariz. R. Civ. P. 56(c)(5). Statements lacking in foundation are not admissible, nor are speculative or conclusory assertions about another party's state of mind. *Florez v. Sargeant*, 185 Ariz. 521, 527 (1996) (holding psychologist's affidavit insufficient to withstand summary judgment on statute of limitations grounds because, when affidavit stated, in conclusory terms, that plaintiff was of "unsound mind" without identifying "facts to

support [that] opinion," it raised no triable issue of fact about whether plaintiff's cause of action was tolled due to plaintiff's unsound mind).

### A. The Nerison Affidavit

**¶29** In her affidavit, Nerison asserts that she and her husband "were assured by the [C]ity that Lot 13 would forever remain undisturbed in any way." Because this vague statement does not indicate *who* gave this purported assurance on behalf of the City or *when* the assurance was given, the statement is inadmissible for lack of foundation and thus insufficient to defeat summary judgment. *See Holcomb v. Ariz. Dep't of Real Est.*, 247 Ariz. 439, 446, ¶ 24 (App. 2019) ("Hearsay is unreliable," and therefore inadmissible in administrative proceeding, if "the speaker is not identified, when no foundation for the speaker's knowledge is given, or when the place, date and time, and identity of others present is unknown.") (citation omitted); *see also Lindenbaum v. Realgy, LLC*, 606 F. Supp. 3d 732, 742 (N.D. Ohio 2022) (holding plaintiff's affidavit insufficient to defeat summary judgment because "plaintiff laid no foundation to show that the anonymous" speaker, who made the actionable statement, "was authorized to speak on defendant's behalf").

**¶30** The Nerison affidavit also states that the City's "interest" in the land swap transaction "was to keep the higher area from any development or disturbance," and "[i]t was completely understood that Lot 13 would remain as a natural and undisturbed part of the South Mountain Park Preserve." Nerison's conclusory assertions about the City's interest in, and understanding of, the land swap transaction, unaccompanied by any specific facts, do not constitute admissible evidence, and so cannot defeat summary judgment. *See Florez*, 185 Ariz. at 527; *see also People v. Sanchez*, 375 P.3d 812, 850 (Cal. 2016) ("A lay witness generally may not give an opinion about another person's state of mind, but may testify about objective behavior.").

**¶31** Moreover, the law is clear that a single municipal official—even a member of the municipal governing body—is not competent to testify about the municipality's intent in engaging in a particular transaction. *Long*, 208 Ariz. at 331, ¶ 42 n.8 (observing that city council member would not "be allowed to testify as to the intent of the City in its dealings with [plaintiff]"). If an individual City official could not properly testify about the City's understanding and intent in entering the land swap transaction, then Nerison is certainly not competent to do so. For these reasons, the assertions in the Nerison affidavit are inadmissible and thus

insufficient to create a triable fact issue regarding the intent of the parties to the 1977 land swap transaction.

## B. The Dysthe Declaration

**¶32** The Dysthe declaration states that Dysthe purchased his lot from the Nerisons in 1978 in reliance on the Nerisons' assurance that the nearby hillside property "was restricted from development" and would remain "pristine desert land." Dysthe's recitation of statements Nerison made in 1978, even if accurate, do not establish the City's intent in entering the land swap transaction the year before.

**¶33** The Dysthe declaration also states that in 1988, Dysthe requested, and the City approved, a variance "to forego [*sic*] street construction re 3-lots" that were sold by the Nerisons "in order to avoid construction that would scar the mountain." Although it is not entirely clear, the Dysthe declaration appears to indicate that in 1988, the City agreed, at Dysthe's behest, to forgo street construction in the area of the subdivided lots so as not to disturb the desert's natural condition. This assertion, too, is of no help to Trailhead; the City's willingness to forgo street construction in the vicinity of the subdivided lot in 1988 sheds no light on the City's intent in entering the land swap transaction in 1977.

**¶34** Even if, therefore, the parol evidence rule did not bar the admission of Trailhead's proffered extrinsic evidence, that evidence is insufficient to withstand summary judgment.

## IV. Trailhead's Tort Claim Against Lawyers Title Is Time-Barred.

**¶35** Trailhead further argues that the court erred in granting summary judgment on its breach of fiduciary duty claim against Lawyers Title because, Trailhead contends, Lawyers Title should not have proceeded with closing without first alerting the parties to the absence of a nondevelopment provision in the deed to the hillside property. Trailhead maintains that, upon realizing that the relevant deeds provided that the Christensen property "was restricted to its natural state" but "the hillside property" was not, Lawyers Title should have requested "clarification" from all of the property owners "before proceeding with the concurrent escrows." Its failure to "stop the transaction and ask for clarification," Trailhead asserts, breached the duty that Lawyers Title, as escrow agent, owed to the Nerisons.

**¶36** Irrespective of the merits (which we do not address) of Trailhead's breach of fiduciary claim against Lawyers Title, the claim

accrued in 1977 when the deed was signed and recorded. *See Ader v. Estate of Felger*, 240 Ariz. 32, 39, ¶ 19 (App. 2016) ("A cause of action accrues, and the statute of limitations commences, when one party is able to sue another.") (cleaned up). As a result, the two-year limitations period has long since run. *See* A.R.S. § 12-542; *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 444, ¶ 9 (App. 2017) ("A two-year limitations period applies to claims for breach of fiduciary duty.").

¶**37**         Trailhead contends that the accrual of its claims was tolled until the City began constructing the trails in 2019, asserting that until then Nerison "had no reason to believe" that the hillside property deed "omitted the restrictive language." But Nerison and her husband personally signed the deed to the hillside property, and so had notice of its contents. *Mut. Benefit Health & Accident Ass'n v. Ferrell*, 42 Ariz. 477, 489 (1933) ("A person cannot sign a paper in ignorance of its contents and thereafter excuse such ignorance by the mere plea that he was busy or that he is habitually neglectful in such circumstances."), *overruled in part on other grounds by Occidental Life Ins. Co. v. Bocock*, 77 Ariz. 51 (1954). Because Nerison knew or should have known that the deed lacked a development restriction when she signed it in 1977, any breach of fiduciary duty claim against Lawyers Title arising out of a purported defect in the deed accrued at that time and ran two years later. *See Vaughn-Leavitt Ltd. P'ship v. U.S. Bank Nat'l Ass'n*, 1 CA-CV 22-0040, 2023 WL 2377711, at *4, ¶ 18 (Ariz. App. Mar. 23, 2023) (mem. decision) (finding that a "lienholder's cause of action for the wrongful release of its lien . . . [was] not delayed until the property [was] sold and the lienholder left empty-handed" but rather accrued once the unauthorized release was recorded); *see also Cosgrove v. Cade*, 468 S.W.3d 32, 34-35, 37, 40 (Tex. 2015) (holding that property sellers' claims against buyer, which were brought five years after sale and which arose out of purportedly erroneous omission from deed of sellers' reservation of mineral rights, accrued on "the date of [the deed's] execution" and so were barred by four-year limitations statute, noting that a "grantor who signs an unambiguous deed is presumed as a matter of law to have immediate knowledge of material omissions").

¶**38**         Although the court did not grant summary judgment on limitations grounds, we may affirm the judgment if it "is correct for any reason, even if that reason was not considered by the court." *See Melendez*, 232 Ariz. at 330, ¶ 9 (cleaned up). We hold that Trailhead's breach of fiduciary duty claim against Lawyers Title is time-barred, and so affirm summary judgment on that claim.

**¶39** Because Trailhead does not address, on appeal, the claims it asserted below for promissory estoppel, fraudulent concealment, and negligent misrepresentation, we deem those claims abandoned. *See Torrez v. Knowlton*, 205 Ariz. 550, 552, ¶ 3 n.1 (App. 2003) (considering claim not argued on appeal to be abandoned). And because we affirm summary judgment on Trailhead's contract and breach of fiduciary duty claims for the reasons set forth above, we need not address the defendants' alternative arguments in support of the court's ruling.

**¶40** The City and Lawyers Title request an award of attorney fees on appeal under A.R.S. § 12-341.01 and sanctions under A.R.S. § 12-2106. We find no basis for an award of sanctions. In our discretion, we award the City and Lawyers Title reasonable attorney fees under A.R.S. § 12-341.01. As the prevailing parties, the City and Lawyers Title may recover their taxable costs on appeal as well.

## CONCLUSION

**¶41** The superior court correctly interpreted the deed to the hillside property, which contains no development restriction, in accordance with its terms, and correctly rejected the extrinsic evidence Trailhead offered to vary the deed's terms. Further, any claim arising out of the omission of restrictive language from the deed accrued when the deed was signed and recorded in 1977, and any such claim is therefore time-barred. Accordingly, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA